**STATE of Vermont v. Rodney Jay THOMPSON**

**State of Vermont v. Leo F. Hotte, Jr.**

[816 A.2d 550]

Nos. 02-165 & 02-302

¶ 1. December 30, 2002. The issue presented by this consolidated appeal is whether a police officer's observation that a piece of motor vehicle equipment required by the Vermont Periodic Inspection Manual is missing from a vehicle or is defective can provide a reasonable suspicion that a motor vehicle offense is being committed. Defendants Rodney Thompson and Leo Hotte argue that since such items of equipment are not defined as "standard equipment" or an element of "properly equipped" under 23 V.S.A. § 4(37), they cannot form the basis for a lawful motor vehicle stop. We disagree and therefore affirm the denial of

defendant Hotte's motion to suppress and dismiss; and reverse the grant of defendant Thompson's motion to suppress and dismiss.

¶ 2. The facts in both cases are not in dispute. At approximately one o'clock in the morning on October 31, 2001, a town police officer stopped defendant Thompson because the vehicle he was driving, a 1986 Jeep Cherokee, was missing a bumper. Eventually, Thompson was processed for DWI and charged with DWI, third offense, and resisting arrest. The district court granted Thompson's motions to suppress the evidence and dismiss the charges, ruling that because statutory law does not require motor vehicles to be equipped with bumpers, there was no traffic violation, and thus no legal basis for the stop. The State now appeals the dismissal.

¶ 3. At approximately five o'clock in the afternoon on January 2, 2002, a state trooper stopped defendant Hotte because the vehicle he was driving, a 1997 Pontiac Grand Am, was missing a driver's side rearview mirror. The stop led to Hotte's prosecution for driving with a suspended license. The district court denied Hotte's motion to suppress and dismiss on the grounds that the term "properly equipped" under 23 V.S.A. § 1221 encompassed the regulations governing motor vehicle inspections. Hotte subsequently entered a conditional plea of nolo contendre and was sentenced to serve thirty to ninety days, all suspended except for seven days. He now appeals the denial of his motion.

¶ 4. "[T]he law is well-settled that police may stop a vehicle and briefly detain its occupants to investigate a reasonable and articulable suspicion that a motor vehicle violation is taking place." *State v. Lussier*, 171 Vt. 19, 34, 757 A.2d 1017, 1027 (2000). The level of suspicion required for a lawful investigatory stop is considerably less than a preponderance of the evidence, but it must be more than an "inchoate and unparticularized suspi-

cion or 'hunch.'" *State v. Sutphin*, 159 Vt. 9, 11, 614 A.2d 792, 793 (1992) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). We conclude that there was a legal basis for the stop in both cases.

¶ 5. The parties have argued this case as if we were deciding whether the defendants had committed traffic offenses because of the missing equipment. Defendants argue that they could be found to have committed such an offense only if the missing equipment — that is, either the bumper or side mirror — were defined as "standard equipment" or an element of "properly equipped," as provided in 23 V.S.A. § 4(37). Since neither definition includes side mirrors or bumpers, defendants argue that they committed no traffic offense. The State answers that the Commissioner has broad power to define what equipment is required so that a vehicle is not "hazardous or unlawful," *id.* § 1001(a)(1), and to set inspection standards to define whether a vehicle is "in good mechanical condition and ... properly equipped." *Id.* §§ 1221, 1229. The State argues that a violation of the Commissioner's standards, which require bumpers and side mirrors if original equipment on the vehicle, constitutes a traffic offense. We conclude that we do not have to resolve the parties' arguments and leave them until another day.

¶ 6. The Vermont Periodic Inspection Manual, which sets forth the equipment requirements for the annual inspection of all motor vehicles, requires, inter alia, that any motor vehicle manufactured or assembled with a bumper must have a bumper, and that any motor vehicle manufactured or assembled with a driver's side rearview mirror must have such a mirror.[1] Defendants' vehicles did

---

[1] Defendant Hotte contends that the inspection manual requires only that if a driver's side rearview mirror is present on the vehicle, it must meet certain requirements, not that a vehicle must have

not meet these requirements; had these defects existed at the time of inspection, these vehicles would not have received a certification of inspection. Thus, at the time of the stops, there was a reasonable possibility that defendants were committing a traffic offense — operating a vehicle without a valid inspection certification. See 23 V.S.A. § 1222 (prohibiting the operation of a motor vehicle "unless it has been inspected as required by this section and has a valid certification of inspection affixed to it"); *id.* § 2201 (violation of any section of Title 23 is a traffic offense). This situation, and the fact that both vehicles were stopped after dark, making a passing examination of the date of the vehicles' current inspection certification difficult or impossible, are sufficient to establish a reasonable and articulable suspicion that a traffic offense was being committed.[2] As such, the officers

a driver's side rearview mirror. We disagree. The manual states that "[a]ll vehicles manufactured after January 1, 1968 were equipped at the factory with a left-hand exterior rearview mirror," and instructs the inspector to reject the vehicle based on defects in the mirror that would prevent "a clear and reasonably unobstructed view to the rear." Clearly, the fact that the lack of a driver's side rearview mirror would prevent "a clear and reasonably unobstructed view to the rear" indicates that such a mirror is required on all vehicles manufactured after January 1, 1968.

[2] We recognize that the legal basis for the stop given by the officer who stopped defendant Thompson's vehicle — that he stopped defendant for a defective equipment violation — differs from the basis that we have found to have provided the officer with a reasonable suspicion of wrongdoing — that is, the possibility that defendant was operating his vehicle without a valid inspection certification. This is a difference without a distinction

legally stopped defendants' vehicles in order to investigate possible wrongdoing. *Lussier,* 171 Vt. at 34, 757 A.2d at 1027.

*The denial of defendant Hotte's motion to suppress and dismiss is affirmed. The grant of defendant Thompson's motion to suppress and dismiss is reversed and the matter is remanded.*

because, whatever the legal theory, the officer was stopping the vehicle because of missing equipment. In any event, the test of reasonable suspicion is not the officer's subjective motivation for making the stop, but whether "from an objective standpoint ... given all of the circumstances, the officer had a reasonable and articulable suspicion of wrongdoing." *Lussier,* 171 Vt. at 24, 757 A.2d at 1020.