NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 49

No. 2015-044

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Stephen Howard | December Term, 2015 |

Alison S. Arms, J.

Heather J. Brochu, Franklin County Deputy State's Attorney, St. Albans, for
 Plaintiff-Appellant.

Matthew F. Valerio, Defender General, Anna Saxman, Deputy Defender General, and
 Kerrie Johnson, Legal Intern, Montpelier, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **REIBER, C.J.** In this driving under the influence (DUI) case, the State appeals the granting of defendant's motion to exclude evidence collected from a traffic violation stop of his car. The trial court granted the motion and dismissed the case because it concluded that the trooper who conducted the stop did not have a reasonable and articulable suspicion that defendant committed a traffic violation. We reverse and remand.

¶ 2. The court's findings were based on testimony from both the trooper and defendant, and also on cruiser dashcam video of the stop and the events leading up to it. The trooper testified that he was on active duty patrolling the roads of Franklin County on the night of July 26, 2014. He was traveling east along Route 36 and looking for drivers impaired by

drugs or alcohol. As the trooper was following and observing two drivers, defendant—the lead driver—"made an abrupt maneuver over the center line with his vehicle." This maneuver caught the trooper's attention and he pulled defendant over. After the trooper asked defendant if he knew why he had stopped him and defendant replied that he did not, the trooper informed defendant that he had observed him cross the center line. The trooper testified that defendant then told him that the second driver—the one behind him but in front of the trooper—was blinding him with his headlights. During the motion hearing, the trooper was unable to corroborate defendant's explanation; when shown video of the encounter on cross-examination and asked whether the second driver did in fact have his high beams on, the trooper responded "I don't know."

¶ 3. While testifying at the motion hearing, defendant repeated that his ability to see the road was impaired by the reflection in his mirrors of the headlights of the second driver and that he attempted to escape these lights by moving to the left, towards the center line: "All I did was see lights. . . . The lights were—the guy was right behind me. . . . I don't know where I was on the road or anything." Defendant went on to say that, by moving left of the center of his lane, "I could at least get it out of my vision and out of my—the glare out of the side mirror."

¶ 4. After defendant testified, the court orally described its findings and its process of determining whether there was a proper basis for the stop. Because it determined that the trooper did not have a reasonable suspicion that defendant committed a traffic violation, the court granted the motion, excluding the DUI evidence collected from the stop:

> The [c]ourt viewed [the dashcam video] in court, and the [c]ourt observed that the Defendant did, as the Defendant stated, while he was driving or some several seconds before being stopped, maintain his lane. He did not engage in intralane weaving. The Defendant testified that he did move to the left of center in order to get the glare of the headlights of the car behind him out of his line of sight because it was obstructing his vision.
>
> The [c]ourt finds that while the Defendant did move to the center line and did slightly move over the center line, that this was not

2

reasonable and articulable suspicion, that he had committed a motor vehicle infraction. In this case it was, in fact, a very subtle move and would not have indicated that Defendant was under the influence. There was suspicion that he was under the influence of alcohol, and to the extent that it was a violation of a motor vehicle code, it was very slight.

And I think that the Defendant would have provided a sufficient defense if it was just defense to the motor vehicle violation. But in this case the [c]ourt also finds that it was so subtle, that the [c]ourt does not find that he actually committed the violation. So the Defendant's motion is granted.

The court then dismissed the case, and the State now appeals both the granting of the motion to exclude and the dismissal of the case. The State argues that the law does not support the court's finding that the trooper did not have a reasonable basis to perform a stop. Defendant responds that it does. We hold that the court erred in finding that defendant's crossing of the center line "was not reasonable and articulable suspicion, that he had committed a motor vehicle infraction." To the contrary—by the court's own description of the stop and the events leading up to it—the trooper had a reasonable basis to perform a stop because he had a reasonable suspicion that defendant committed a traffic violation. We reverse and remand for additional proceedings.

¶ 5. The prohibition against unreasonable searches and seizures of the Fourth Amendment of the United States Constitution determines whether evidence gathered from a traffic stop may be used against a defendant. See United States v. Cortez, 449 U.S. 411, 417 (1981) ("The Fourth Amendment applies to seizures of the person, including brief investigatory stops such as the stop of the vehicle here."). Under this prohibition, the State need not show that the driver actually committed a wrongdoing before the stop. State v. Rutter, 2011 VT 13, ¶ 10, 189 Vt. 574, 15 A.3d 132 (2011) (mem.) (holding that, to determine legality of stop, Court "need not decide whether defendant actually violated" law concerning starting parked vehicles (emphasis in original)). Nor does a police officer need more than a reasonable suspicion that a driver has committed a wrongdoing to stop the driver. See State v. Beauregard, 2003 VT 3, ¶ 6, 175 Vt. 472, 820 A.2d 183 (mem.) ("The level of suspicion required for a traffic stop under the

Fourth Amendment is 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989))). All that is required is that the officer have a reasonable and articulable suspicion that the driver is engaged in criminal activity or has committed a traffic violation. See State v. Davis, 2007 VT 71, ¶ 7, 182 Vt. 573, 933 A.2d 224 (mem.) ("A police officer is authorized to make an investigatory stop based on a reasonable and articulable suspicion of criminal activity, or of a traffic violation." (quotation omitted)).

¶ 6. We have consistently held that this standard is satisfied if the officer has a reasonable suspicion of even a minor traffic violation. Beauregard, 2003 VT 3, ¶ 5 (holding that loud exhaust system constituted reasonable basis for traffic stop because every car "must have a muffler that is functioning in good mechanical condition" (quotation omitted)); State v. Thompson, 175 Vt. 470, 471-72, 816 A.2d 550, 552 (2002) (mem.) (upholding officers' stop of car for missing driver-side mirror and bumper because state law requires such equipment).

¶ 7. Crossing the center line of the road qualifies as one of those violations. Under 23 V.S.A. § 1031, with four exceptions, drivers are required to drive on the right half of the roadway:

> (a) Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
>
> (1) when overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;
>
> (2) when an obstruction exists making it necessary to drive to the left of the center of the highway; provided, any person so doing shall yield the right of way to all vehicles traveling in the proper direction upon the unobstructed portion of the highway within such distance as to constitute an immediate hazard;
>
> (3) upon a roadway divided into three marked lanes for traffic under the rules applicable thereon; or
>
> (4) upon a roadway restricted to one-way traffic.

4

23 V.S.A. § 1031. If the road has a center line, touching the center line is not in itself a traffic violation; at least one wheel must actually cross the center line into the opposite lane of traffic. Courts in other states have interpreted their "drive to the right" statutes the same way. See, e.g, State v. Ollinger, No. 14-1619, 2015 WL 4233259, *4 (Iowa Ct. App. July 9, 2015) (explaining that "drive to the right" statute does not "criminalize touching the centerline but rather mandates 'driving' on the right half of the roadway"); State v. McGregor, No. 107, 855, 2013 WL 1010590, **1,3 (Kan. Ct. App. Mar. 8, 2013) (holding that touching center line is not traffic violation and rejecting analogy that "touchdown is a touchdown at the touchdown line"); State v. Mendoza, 75 S.W.3d 842, 845, 846 (Mo. Ct. App. 2002) (finding that officer lacked reasonable suspicion to stop vehicle that "was driven onto but not over the left yellow line").

¶ 8.    Moreover, our case law interpreting 23 V.S.A. § 1031 is clear that any crossing of the center line—no matter how slight—is a traffic violation. In State v. Marshall, the arresting officer gave conflicting testimony about how long the defendant had crossed the center line, estimating that it was for either as few as three to five seconds or as long as two minutes. 2010 VT 81, 188 Vt. 640, 8 A.3d 1086 (mem.). We held that this uncertainty—whether the crossing was merely "momentary" or was instead "lengthier and more egregious"—was irrelevant. Id. ¶ 7. Regardless of length, the crossing was a traffic violation, and the court's finding that it was insufficient to support a reasonable suspicion of wrongdoing was reversible error. Id. ¶ 9. ("Since the perceived traffic violation constituted a reasonable and articulable basis for the stop, it was error to further scrutinize the violation for additional indicia of DUI or some other criminal offense in order to justify the officer's intervention.").

¶ 9.    In DUI cases, evidence gathered from a stop may be admitted so long as the officer had a reasonable and articulable suspicion that the driver (1) committed a specified traffic violation, such as crossing the center line, or (2) that—based on the totality of the circumstances—the driver was under the influence of alcohol. See id., ¶ 8 ("It is true that where

5

no traffic violation exists we look to the totality of the circumstances in judging the reasonableness of a DUI stop"); see also State v. Pratt, 2007 VT 68, ¶ 6, 182 Vt. 165, 932 A.2d 1039 (upholding legality of DUI stop where driver was "drift[ing] back and forth within his lane several times over a distance of approximately five miles"); State v. Boyea, 171 Vt. 401, 409, 765 A.2d 862, 867 (2000) (upholding legality of DUI stop based on "an anonymous report of an erratic or drunk driver on the highway" even though officer did not observe erratic driving). After stopping a driver, the officer may detain the driver for further investigation, but this investigation may "proceed no further than necessary to effectuate the purpose of the stop." State v. Sprague, 2003 VT 20, ¶ 17, 175 Vt. 123, 824 A.2d 539.

¶ 10.   The court's description of the trooper's stop of defendant describes that the trooper had a reasonable and articulable suspicion that defendant committed a specified traffic violation: crossing the center line.  The court specifically found that defendant "did move to the center line and did slightly move over the center line," but it also remarked that "this was not reasonable and articulable suspicion, that he had committed a motor vehicle infraction."  These two observations do not align.  Because the court found that defendant moved over the center line, it necessarily must have determined that there was a reasonable suspicion of a traffic violation and therefore a reasonable basis for the stop.  See Marshall, 2010 VT 81, ¶ 3 (reversing grant of suppression motion in case where court found no reasonable suspicion despite its finding that officer "observed the car cross over the center line").  The court's subsequent observations that the traffic violation was "very subtle" and "very slight" do not alter our conclusion.  As previously noted, the crossing need not be prolonged or extreme to constitute a traffic violation; any crossing—no matter how slight—is sufficient.  See Rutter, 2011 VT 13, ¶ 16 ("[T]he protections of Article 11 do not extend to prohibiting law enforcement officers from stopping motor vehicles where there is an objectively reasonable suspicion that a motor vehicle violation has occurred, even if in a particular situation these infractions may appear 'trivial.' ").

¶ 11.    The court's finding that defendant "testified that he did move to the left of center in order to get the glare of the headlights of the car behind him out of his line of sight because it was obstructing his vision" is irrelevant to the specific question of legal basis for the stop.  The lights arguably would justify defendant's action and thereby give him a defense to a traffic law violation charge.  See 23 V.S.A. § 1031(a)(2) ("Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except . . . when an obstruction exists making it necessary to drive to the left of the center of the highway").  But, as previously noted, the inquiry in cases involving traffic violation stops is merely whether the officer had a reasonable suspicion of a wrongdoing, not whether the defendant actually committed a wrongdoing.  See Rutter, 2011 VT 13, ¶ 10 (holding that in analyzing whether "the facts as found were sufficient for the officer to reasonably suspect that defendant violated [safe driving law] . . . we need not decide whether defendant actually violated [safe driving law]." (emphasis in original)); Thompson, 175 Vt. at 471, 472, 816 A.2d at 552, 553 (analyzing whether facts were "sufficient to establish a reasonable and articulable suspicion that a traffic offense was being committed" rather than "deciding whether the defendants had committed traffic offenses because of the missing equipment.").  The court specifically found that defendant crossed the center line, and the trooper had a reasonable suspicion that defendant committed a traffic violation as soon as this crossing occurred.

Reversed and remanded for further proceedings.

FOR THE COURT:

_____

Chief Justice

7