*155 Skoglund, J.
¶ 1. Following her conditional plea of guilty to a charge of driving while intoxicated (DWI), second offense, defendant appeals the superior court’s denial of her motions to suppress evidence from the vehicle stop and dismiss the case. She argues that there was no reasonable basis for the stop and that, in any event, all evidence should have been suppressed due to the arresting officer’s failure to produce a complete video recording of the stop. We affirm.
¶ 2. Shortly before midnight on January 17, 2015, a Town of Richmond police officer stopped defendant’s vehicle. The officer eventually had defendant exit the vehicle to perform field sobriety tests and provide a preliminary breath test sample, which revealed a blood-alcohol concentration (BAC) of 0.135%. The officer then arrested defendant and transported her to the Richmond police station, where she was processed for DWI. After consulting with an attorney, defendant agreed to provide a breath sample, which the Datamaster infrared device analyzed as containing a BAC of 0.127%. Defendant exercised her right to a second test, which revealed a BAC of 0.133%. Defendant also obtained a test kit for an independent blood test.
¶ 3. Defendant was charged with DWI, second offense. She filed a motion to suppress and dismiss, arguing that the stop of her vehicle was unconstitutional because the arresting officer lacked any reasonable suspicion of her having committed a crime or violated any traffic law. Later, she filed a second motion to suppress and dismiss, this time arguing that the State failed to provide her with an uncorrupted video recording of the stop. See 23 V.S.A. § 1203(k) (“A copy of a videotape made of the alleged offense shall be provided to the defendant within ten days after the defendant requests the copy and pays a $45.00 fee for its reproduction.”); see also V.R.C.R 80.5(e) (“A copy of a videotape made of the alleged offense and subsequent processing shall be available for purchase by the defendant directly from the law enforcement agency responsible for initiating the action . . . .”); V.R.Cr.R 16(e) (same). At an April 8, 2015 hearing on the latter motion, the Chittenden Unit of the Superior Court’s Criminal Division dismissed the civil suspension of defendant’s driver’s license based on a standing order in that court with respect to the government’s failure to produce a requested copy of a video recording. The court ruled, however, that whether the criminal case should be dismissed warranted further review under the *156 factors set forth in State v. Bailey, 144 Vt. 86, 94-95, 475 A.2d 1045, 1050 (1984), for cases involving lost or undisclosed evidence.
¶ 4. At a later status conference it was revealed that only approximately seven minutes of the recording of the stop could be viewed because the arresting officer had not flipped a toggle switch that would have continued the recording after his cruiser’s blue lights were turned off.
¶ 5. A hearing in the criminal matter was held on June 25, 2015. Following the hearing, defendant renewed her motion to dismiss, arguing that if the court concluded that the arresting officer was negligent in not preserving a recording of the stop, it must undertake a Bailey analysis. See State v. Porter, 2014 VT 89, ¶ 29, 197 Vt. 330, 103 A.3d 916 (stating that although “police do not have a duty to collect all evidence that could potentially favor the defense,” there could be situations where negligent conduct by police was sufficiently prejudicial to defendant to warrant sanctions, in which case, “the Bailey test is an adequately flexible method to determine the appropriate sanction”).
¶ 6. On July 28, 2015, the superior court denied defendant’s renewed motion to dismiss, ruling that while the arresting officer was negligent in not preserving a complete video recording of the stop, the Bailey factors did not favor defendant because the recording would most likely not have revealed exculpatory evidence. See Bailey, 144 Vt. at 94-95, 475 A.2d at 1050 (stating that if defendant shows reasonable possibility that missing evidence would have been favorable to defendant, court must balance (1) degree of negligence or bad faith by government, (2) importance of lost evidence, and (3) other evidence of guilt adduced at trial). Moreover, the court noted that although defendant provided a breath sample within two hours of operation that revealed a BAC well in excess of the legal limit, because she later obtained a test kit for an independent blood test she would have an opportunity at trial to challenge the breath test result.
¶ 7. On September 21, 2015, the superior court held a hearing to consider both defendant’s original motion to suppress and dismiss, in which she argued that there was no reasonable basis for the stop of her vehicle, as well as her motion to reconsider the court’s July 28 decision. Once again, the arresting officer was the sole witness at the hearing. Two days after the hearing, the superior court issued a ruling denying defendant’s motions. The court ruled that none of the “three missteps” by defendant while *157 operating her vehicle individually constituted a traffic violation, but that the combination of those actions indicated defendant was not driving attentively and thus justified the officer stopping her vehicle based on a reasonable suspicion that she might be intoxicated. Further, the court denied defendant’s motion to reconsider its July 28 order in light of its conclusion that the stop had in fact been lawful.
¶ 8. On appeal, defendant argues that, pursuant to the criteria set forth in Bailey, evidence from the stop should be suppressed and the case dismissed. She also argues that there was no reasonable basis for the stop. In reviewing a denial of a motion to suppress, we will uphold the trial court’s findings as long as they are supported by evidence, but we review de novo whether the facts meet the proper standard to justify a stop. State v. Rutter, 2011 VT 13, ¶ 6, 189 Vt. 574, 15 A.3d 132 (mem.).
¶ 9. “A legal investigatory stop is justified if a police officer has a reasonable and articulable suspicion of criminal activity.” State v. Pratt, 2007 VT 68, ¶ 5, 182 Vt. 165, 932 A.2d 1039 (citation omitted). Reasonable and articulable suspicion requires “more than an unparticularized suspicion or hunch of criminal activity, but . . . considerably less than proof of wrongdoing by a preponderance of the evidence.” Id. (quotation omitted). “Reasonable suspicion is assessed by examining the totality of the circumstances” while “balancing the public’s interest in safety against the relatively minimal intrusion posed by a brief investigative detention.” Id. (quotation omitted). We have held that “[rjeasonable and articulable suspicions of motor-vehicle violations are sufficient to justify traffic stops.” State v. Harris, 2009 VT 73, ¶ 3, 186 Vt. 225, 980 A.2d 785. “As such, we have upheld investigatory stops for suspicion of DUI based on erratic driving.” Pratt, 2007 VT 68, ¶ 5. The relevant question is not whether a motor vehicle violation actually occurred, but rather only “whether the officer had a reasonable basis to suspect that a motor vehicle violation was taking place.” Rutter, 2011 VT 13, ¶ 10.
¶ 10. Defendant asserts that the stop here could not have been supported by reasonable suspicion because the superior court found no traffic violations and the arresting officer did not allege in his affidavit that he stopped her vehicle based on his suspicion of a possible DWI. As noted above, however, the question is not whether there was actually a traffic violation but *158 rather whether the arresting officer had an objectively reasonable belief that there was a traffic violation. Moreover, we have reiterated “that an officer’s subjective intent for stopping a defendant’s car is not relevant as long as there is an objectively reasonable basis for the stop.” Id. ¶ 15. Id. ¶ 16 (concluding “that the protections of Article 11 do not extend to prohibiting law enforcement officers from stopping motor vehicles where there is an objectively reasonable suspicion that a motor vehicle violation has occurred, even if in a particular situation these infractions may appear ‘trivial’ or the officer’s motivation is suspect”); see also State v. Lussier, 171 Vt. 19, 23-24, 757 A.2d 1017, 1020 (2000) (“In determining the legality of a stop, courts do not attempt to divine the arresting officer’s actual subjective motivation for making the stop; rather, they consider from an objective standpoint whether, given all of the circumstances, the officer had a reasonable and articulable suspicion of wrongdoing.”).
¶ 11. In this case, the arresting officer testified that he observed defendant nearly hit another car while exiting a store parking lot when she failed to yield the right of way to the other car pulling into the parking lot. He stated that the operator’s lack of attention or due regard aroused his suspicion as to her condition, so he followed the vehicle after it left the parking lot. He testified further that, in following the vehicle, he observed that at one point during a left-hand turn the vehicle crossed over the fog line and kicked up dirt along the shoulder of the road, and at another point during a right hand turn the headlights were turned off for a couple of seconds.
¶ 12. Taken together, defendant’s actions were sufficient to create a reasonable and articulable suspicion that defendant may have been driving impaired. Cf. State v. Bruno, 157 Vt. 6, 11, 595 A.2d 272, 275 (1991) (concluding that arresting officer’s observations of defendant swerving and drifting in his lane before briefly parking and then operating his vehicle without headlights were sufficient to raise officer’s reasonable and articulable suspicion that defendant was driving impaired). In a relatively short period of time, the officer observed multiple indications of defendant’s lack of attention while operating her vehicle. Thus, the officer had more than an unparticularized suspicion or hunch of impaired driving. Regardless of whether any one of defendant’s “missteps” actually amounted to a motor vehicle violation, the officer could have reasonably believed that there was a traffic violation or that *159 defendant was driving impaired. See 23 V.S.A. § 1243(b) (providing that vehicles operating on state highways between thirty minutes after sunset and thirty minutes before sunrise must display lights).
¶ 13. Defendant argues, however, that the stop should be suppressed and the case dismissed under a Bailey analysis. According to defendant, the stop should be suppressed because of the arresting officer’s “active failure to preserve evidence that likely would have been favorable to her.” In support of her claim that a complete video recording may have produced exculpatory evidence, defendant contends that the arresting officer claimed in his affidavit that defendant’s speech was “confused” but then conceded in his testimony at the September 21 hearing that the word “excited” would be more appropriate — which defendant contends is not a cue for intoxication. Examining the three Bailey factors, defendant further asserts that: (1) as the trial court found, the arresting officer was grossly negligent because on prior occasions unrelated to this case he had failed to flip the toggle switch; (2) a complete video recording was important because she produced evidence demonstrating that the officer’s prior recollections were not accurate; and (3) the only other evidence of guilt was the officer’s other questionable observations and the evidentiary test administrations.
¶ 14. We discern no basis to overturn the superior court’s denial of defendant’s motion to dismiss due to the limited video recording. As an initial matter, it is questionable whether Bailey is even applicable under the circumstances of this case, as Justice Dooley explains in his concurrence. In any event, in State v. Dimick, 173 Vt. 547, 548-49, 790 A.2d 435, 436-37 (2001) (mem.), we reversed the trial court’s exclusion of all evidence derived from a stop where the court accepted the defendant’s claim that the police had a legal duty to create a video recording of all roadside stops and ensuing field sobriety tests. We concluded that neither the statute requiring police to provide defendants with a copy of a video recording made of the alleged offense, see 23 V.S.A. § 1203(k), nor any police rules or regulations compelled the police to record stops. Dimick, 173 Vt. at 549-50, 790 A.2d at 437. We stated that “[bjecause the Legislature has chosen not to require officers to tape all major roadside stops, this Court will not create such a requirement by ‘judicial fiat.’ ” Id. at 550, 790 A.2d at 438. The same situation exists in this case. The Legislature has not enacted *160 such a requirement, and the arresting officer testified that no such policy exists within his department.
¶ 15. Defendant’s reliance on Porter does not help her. In that case, the defendant, who was convicted of attempted kidnapping, argued that the State’s failure to collect or preserve four specific items of potentially exculpatory evidence should have resulted in dismissal of the charges pursuant to Bailey. We rejected the defendant’s argument “that the failure to collect evidence in the first place is equivalent to destroying, losing, or failing to preserve exculpatory evidence” because “[t]he police do not have a duty to collect all evidence that could potentially favor the defense.” Porter, 2014 VT 89, ¶ 29. We stated, however, that “the Bailey test is an adequately flexible method to determine the appropriate sanction” in situations where the “negligent conduct of police is sufficiently prejudicial to the defense to warrant sanctions.” Id. Thus, even though police do not have a duty to collect all potentially exculpatory evidence, the Bailey factors apply in situations where the State’s failure to procure potentially exculpatory evidence results in prejudice — for example, failing to procure a bloody knife lying next to a body in a murder case, see State v. Wheelock, 158 Vt. 302, 312, 609 A.2d 972, 978 (1992).
¶ 16. Because we have explicitly held that, absent a requirement in a statute or written police policy, there is no legal duty to record roadside stops, here the officer’s failure to record the stop was not negligent, despite the superior court’s finding to the contrary. See Dimick, 173 Vt. at 549-50, 790 A.2d at 437.
¶ 17. In any event, this is not a case where failure to preserve/produce evidence would warrant sanctions. Defendant cannot show prejudice here. First, the alleged negligence was failing to flip the toggle switch, but that did not occur until after the stop and the cruiser’s blue lights were turned off. Thus, the alleged negligence had no impact on the lack of a preserved recording of all of the incidents that led to the stop. Second, in his affidavit and at the June 25 hearing, the arresting officer testified that when he approached defendant’s car after the stop he smelled a very slight odor of intoxicants and observed that defendant’s eyes were slightly bloodshot. A video recording would not have picked up these observations. Third, the officer further testified that defendant admitted to recently consuming alcohol, that she willingly agreed to perform field dexterity tests, and that *161 the officer observed multiple cues of intoxication based on her performance of those tests. While a video recording could conceivably have undercut the officer’s observations of impairment cues with respect to balance on two of the three tests, there were impairment cues on one of the tests related to eye movement that the recording would not have picked up. Fourth, defendant agreed to submit to a preliminary breath test, which indicated a BAC well over the legal limit, as did the two evidentiary tests taken at the police station.
¶ 18. Nor could defendant demonstrate a reasonable possibility that a video recording would have produced evidence in her favor. See Commonwealth v. Olszewski, 625 N.E.2d 529, 535 (Mass. 1993) (emphasizing that “reasonable possibility” must be “based on concrete evidence and not on mere speculation, that the [government’s] actions deprived [the defendant] of evidence that would have been favorable to his case”). The record does not support the principal basis for defendant’s argument — that a complete video recording of the roadside stop would have produced evidence contradicting the arresting officer’s account of what happened. She argues that the officer stated in his affidavit that her speech was “confused” — a cue for impairment — but that he conceded at the September 21 hearing that he should have described her speech as “excited” rather than “confused.” Her point is that since we know the officer inaccurately described a cue for impairment in this instance, there is a reasonable possibility that he also inaccurately described other alleged impairment cues, including those associated with the field dexterity tests. The problem with this argument is that in his affidavit the officer did not describe defendant’s speech as confused; rather, he stated that defendant “appeared confused, unable to locate the registration.” Thus, at the hearing when the officer described her speech as “excited” rather than “confused,” he was not contradicting the statement in his affidavit. In short, even if we were to assume negligent conduct on the part of the officer based on some unexplained duty, defendant cannot demonstrate sufficient prejudice to warrant sanctions per Porter.

Affirmed.