NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 109

No. 2020-034

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Anthony Brunetta | September Term, 2020 |

David R. Fenster, J.

Rosemary Kennedy, Rutland County State's Attorney, and L. Raymond Sun, Deputy State's
  Attorney, Rutland, for Plaintiff-Appellee.

Mark Eastman Furlan of Furlan & Associates, PLLC, Rutland, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.


¶ 1.    **EATON, J.**    Defendant appeals the civil suspension of his driver's license for driving under the influence (DUI), arguing that the criminal division erred in denying his motion to suppress evidence he alleges was obtained based on an illegal stop of his vehicle.  Specifically, defendant claims the officer lacked a reasonable, articulable suspicion of wrongdoing to stop his car as required by the federal and state constitutions.  We affirm.

¶ 2.    A state trooper, parked near an intersection in the town of Chittenden, stopped defendant's vehicle shortly after midnight on January 1, 2019, after observing it turn right at the

intersection without using a turn signal.[1] During the stop, the trooper noticed that defendant exhibited signs of intoxication. The trooper eventually arrested defendant for DUI and issued a notice to suspend his driver's license.

¶ 3. Defendant moved to suppress all evidence arising from the stop in both the criminal DUI and civil suspension cases. The criminal division held a hearing on the motion in November 2019. At the hearing, the State played a dashboard video recording of the stop, and the trooper who stopped defendant testified that he did not observe defendant use a turn signal at the intersection. On cross-examination, the trooper reiterated that defendant did not use his turn signal at the intersection, and that he would have seen the signal if defendant had used it. After the trooper acknowledged that it was dark at the time he stopped defendant, defense counsel asked him if he saw whether defendant "had rolled his window down and signaled with a hand signal for a right-hand turn." The trooper responded, "No, I did not see that."[2] Defendant did not testify at the hearing.

¶ 4. At the close of evidence, defendant argued, among other things, that there was no legal basis for the stop because the State had failed to meet its burden of showing that defendant did not use a hand signal before turning—an option allowed under 23 V.S.A. § 1064(a). Id. (requiring drivers to use hand signals or vehicle's mechanical or lighting signal devices to indicate intent to change direction). The criminal division rejected this argument, concluding that, upon observing defendant's failure to use a lighting or mechanical turn signal at the intersection, the state trooper had a reasonable basis to stop defendant's vehicle on grounds of a suspected motor-vehicle violation—failing to signal before turning. According to the court, defendant could have

---

[1] Because the trial court made no findings concerning the season and hour during which the stop took place, we recount this information for purposes of background alone.

[2] It is not entirely clear whether the officer meant he did not see a hand signal because one was not given, or he was unable to see whether one was given. For purposes of this review, we assume, as the trial court did, that the latter was intended.

2

testified that he made a hand signal, and a factfinder could have concluded that he had in fact done so, but, even if such were the case, the trooper had a reasonable basis to stop defendant's vehicle to investigate whether a violation of § 1064(a) had taken place. After denying the motion to suppress, the court entered judgment in the civil-suspension matter and scheduled a pretrial conference in the criminal case.

¶ 5. On appeal from the civil suspension of his license, defendant renews his argument that § 1064(a) permits the use of a hand signal as an alternative to a mechanical or lighting turn signal to indicate a change of direction, and that the State failed to meet its burden of establishing that he failed to use a hand signal on this occasion. In defendant's view, unless the State presents evidence establishing that a defendant used neither a hand signal nor a mechanical or lighting turn signal before changing direction, it cannot meet its burden of demonstrating that there was a reasonable basis to stop a vehicle for failure to signal before turning.

¶ 6. "In reviewing a denial of a motion to suppress, we will uphold the trial court's findings as long as they are supported by evidence, but we review [without deference] whether the facts meet the proper standard to justify a stop." State v. Hayes, 2016 VT 105, ¶ 8, 203 Vt. 153, 154 A.3d 964. "A legal investigatory stop is justified if a police officer has a reasonable and articulable suspicion of criminal activity." State v. Pratt, 2007 VT 68, ¶ 5, 182 Vt. 165, 932 A.2d 1039. "Reasonable and articulable suspicion requires more than an unparticularized suspicion or hunch of criminal activity, but . . . considerably less than proof of wrongdoing by a preponderance of the evidence." Hayes, 2016 VT 105, ¶ 9 (quotation omitted). "Reasonable suspicion is assessed by examining the totality of the circumstances while balancing the public's interest in safety against the relatively minimal intrusion posed by a brief investigative detention." Id. (quotations omitted). "Reasonable and articulable suspicions of motor-vehicle violations are sufficient to justify traffic stops." State v. Harris, 2009 VT 73, ¶ 3, 186 Vt. 225, 980 A.2d 785. "The relevant question is not whether a motor vehicle violation actually occurred, but rather only 'whether the

3

officer had a reasonable basis to <u>suspect</u> that a motor vehicle violation was taking place.' " <u>Hayes</u>, 2016 VT 105, ¶ 9 (quoting <u>State v. Rutter</u>, 2011 Vt. 13, ¶ 10, 189 Vt. 574, 15 A.3d 132 (mem.)); see also <u>Ornelas v. United States</u>, 517 U.S. 690, 695 (1996) (explaining that reasonable suspicion is a "commonsense, nontechnical conception[] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act[,]' " not a " 'finely-tuned standard[],' comparable to the standards of proof beyond a reasonable doubt or . . . by a preponderance of the evidence" (quoting <u>Illinois v. Gates</u>, 462 U.S. 213, 231, 235 (1983)).

¶ 7.　Defendant does not challenge the criminal division's finding that he did not use his vehicle's turn signal before changing direction at the intersection in question.　He argues only that the state trooper had no reasonable basis to stop him without first confirming that he did not use a hand signal instead of the vehicle's turn signal.　We disagree.　Defendant correctly observes that 23 V.S.A. § 1064(a) unambiguously allows a driver to discharge the responsibility to signal a turn by using a hand signal rather than a mechanical or lighting signal.　But this does not mean that a law enforcement officer who is unable to see a hand signal even if one is given—whether due to darkness, weather conditions, or vantage point relative to the vehicle in question—may never form a reasonable suspicion that § 1064(a) has been violated.

¶ 8.　Constitutional prohibitions against unreasonable seizures simply do not require that law enforcement officers rule out every possibility that a driver has complied with the motor-vehicle code before effectuating an investigative stop.　See <u>State v. Lussier</u>, 171 Vt. 19, 34, 757 A.2d 1017, 1027 (2000) ("[T]he law is well-settled that police may stop a vehicle and briefly detain its occupants to investigate a reasonable and articulable suspicion that a motor vehicle violation is taking place.").　Indeed, this Court has repeatedly "found stops justified where officers had reason only to <u>suspect</u> that a noncriminal motor vehicle code violation occurred." <u>State v. Marshall</u>, 2010 VT 81, ¶ 6, 188 Vt. 640, 8 A.3d 1086 (mem.) (emphasis added) (citing cases); see also <u>State v.</u>

4

Howard, 2016 VT 49, ¶ 5, 202 Vt. 51, 147 A.3d 88 (noting that under reasonable-suspicion standard, "the State need not show that the driver actually committed a [traffic violation] before the stop"); State v. Boyea, 171 Vt. 401, 404, 765 A.2d 862, 864 (2000) (observing that reasonable suspicion standard is less demanding than probable cause because it may be established by a smaller quantity of information, and less reliable information, than that required for probable cause); State v. Bowley, No. 2007-045, 2007 WL 5313370, at *1 (Vt. Dec. 19, 2007) (unpub. mem.), https://www.vermontjudiciary.org/sites/default/files/documents/eo07-045.pdf [https://perma.cc/C94T-38EQ] (holding that regardless of whether license plate displayed on front dashboard satisfied license-plate statute, stop was justified because officer "observed that defendant's plate was not displayed on the front bumper of defendant's car where the officer would routinely have checked").

¶ 9.      Thus, in State v. Thompson, we held two stops appropriately grounded in reasonable suspicion of a traffic violation—namely, operating a motor vehicle absent a valid certification of inspection—where officers observed the absence of equipment necessary to pass inspection. 175 Vt. 470, 472, 816 A.2d 550, 553 (2002) (mem.). Although it was possible that the equipment in question was present at the time of each vehicle's yearly inspection, and therefore no motor-vehicle violation was taking place at the time of the stop, "[t]his situation, and the fact that both vehicles were stopped after dark, making a passing examination of the date of the vehicles' current inspection certification difficult or impossible, [were] sufficient to establish a reasonable and articulable suspicion that a traffic offense was being committed." Id.; see also Howard, 2016 VT 49, ¶ 11 (holding stop justified on reasonable suspicion that driver committed traffic violation by crossing center line, even though such action is lawful where necessitated by obstruction and driver alleged existence of such obstruction; purported obstruction was defense to traffic-violation charge but "irrelevant to the specific question of legal basis for the stop"). It follows that, where an officer suspects that a driver failed to signal a turn, but is unable to confirm

5

or rule out the use of a hand signal, the officer may nonetheless have reasonable suspicion of a failure to signal sufficient to stop the car to further investigate the suspected traffic violation.

¶ 10.　Indeed, even under the considerably more demanding probable-cause standard, this Court does not require that officers rule out every possible means of compliance with a criminal statute to obtain a warrant to investigate whether the statute was violated.　For example, in State v. Senna, we held that the odor of fresh marijuana outside the entry to a home supported a finding of probable cause to search the residence, despite the fact that the then-existing marijuana law immunized "registered patients" from prosecution.　2013 VT 67, ¶¶ 9, 16, 194 Vt. 283, 79 A.3d 45.　The possibility that an occupant of the home could be a registered patient did "not negate the State's probable cause to search based in part on the odor of fresh marijuana."　Id. ¶ 13. Considering that "[t]he term 'probable cause' rings a bell of certainty . . . not sounded by phrases such as 'reasonable suspicion,' " we have no difficulty in concluding that the latter standard does not require more.　Terry v. Ohio, 392 U.S. 1, 37 (1968); cf. State v. Yazzie, 2016-NMSC-026, ¶¶ 33, 36, 376 P.3d 858 (finding that because reasonable-suspicion standard "engages probabilities," officer acted constitutionally in stopping vehicle based on Motor Vehicle Division database query indicating car had "unknown" compliance status with insurance law).

¶ 11.　In applying Ohio's turn-signal statute—which, like Vermont's, allows the driver of any type of vehicle to employ a hand signal in place of a mechanical or lighting signal—that state's intermediate appellate courts have repeatedly held that an officer may initiate a stop based on reasonable suspicion of a traffic violation "if the officer claims he did not see a hand signal—the State does not have to prove beyond a reasonable doubt that the offense occurred."　State v. Matheney, 2016-Ohio-7690, ¶ 19 (Ct. App.) (quoting State v. Williamson, 2002-Ohio-7320, ¶¶ 8-10 (Ct. App.)); see also Williamson, 2002-Ohio-7320, ¶ 10 ("The officer . . . testified he did not

6

see any signal given. That is enough to stop and investigate."). We find these holdings both reasonable and consistent with our own law.[3]

¶ 12. Where an officer observes a driver fail to use a lighting or mechanical signal prior to a turn, but cannot confirm or deny whether the driver used a hand signal, the officer has reasonable suspicion to stop the car to investigate the suspected motor-vehicle violation.[4] The factual differences defendant relies on to distinguish Hayes and Rutter from this case do not undermine the basic principle stated in those cases: that the critical question is whether an officer had an objectively reasonable basis to stop a vehicle based on suspicion of a motor-vehicle

---

[3] We cannot agree with the dissent's suggestion that the instant case is distinguished from Williamson because in that case some evidence existed to support a reasonable suspicion of a turn-signal violation, while—in the dissent's view—no such evidence was offered here. Post, ¶ 21. The investigating officer in this case testified that he "did not see" defendant roll down his window and use a hand signal to warn of his intention to turn. The officer in Williamson also so testified, acknowledging—as we presume the officer intended to indicate here—that he did not have a clear view of the driver's side window. 2002-Ohio-7320, ¶¶ 8, 10. Under these facts, the court in Williamson nevertheless held that an officer's testimony that he did not see a hand signal—despite not having a clear view of the driver's side window—was sufficient to support reasonable suspicion of a traffic violation. Id. The fact that, in Williamson, the defendant took the stand and testified that she used a hand signal could be a defense to a charge for failure to signal, but was entirely beside the point with respect to the existence of reasonable suspicion for the stop. Id. ¶ 10 ("The use of a proper hand signal may be a defense to the failure to use a proper signal, however, that is not the issue. The State does not have to prove beyond a reasonable doubt the offense occurred; the standard is did the officer have a reasonable articulable suspicion to stop."). As a result, we fail to see how the fact that defendant here did not aver that he used a hand signal distinguishes this case from Williamson in a meaningful way.

[4] We note that under the analysis set forth by the dissent, where an officer is unable to see the driver's-side window of a vehicle—whether due to darkness, the officer's position relative to the car, the presence of visual obstructions in the surroundings, or weather conditions such as snow or rain—that officer could never form a reasonable suspicion that the driver of that vehicle turned without signaling. We cannot agree that officers are thus limited in their ability to investigate suspected violations of this safety statute. See State v. Cook, 2018 VT 128, ¶ 11, 209 Vt. 98, 203 A.3d 509 ("We have long recognized that motor-vehicle statutes governing direction and stop signals are safety statutes intended to protect the public travelling on Vermont's roadways."). Such a limitation is particularly untenable in that it is more likely to occur under conditions of snow, rain, or darkness, which not only impair the visual perception of law-enforcement officers, but of all those operating on the roadway—a fact which renders the use of turn signals of heightened importance to "provide valuable information about the vehicle's intention . . . preventing potential collisions." Id. (explaining that absent signal, positioning in turn-only lane does not necessarily suffice to advise other drivers of intent to turn "especially at night").

violation under the circumstances present at the time—not whether the violation actually occurred. Hayes, 2016 VT 105, ¶ 12 (concluding that officer had reasonable suspicion because "[r]egardless of whether any one of defendant's 'missteps' actually amounted to a motor vehicle violation, the officer could have reasonably believed that there was a traffic violation"); Rutter, 2011 VT 13, ¶¶ 9-10 (holding "brief squealing of tires" sufficient to support reasonable suspicion that defendant violated motor-vehicle law requiring vehicles to remain stationary unless "movement can be made with reasonable safety"). And defendant's argument cannot survive application of that principle.

¶ 13. The officer's inability to determine whether a hand signal was used before defendant turned may have provided a defense to a traffic ticket for failure to signal, but it does not diminish the reasonableness of the articulable suspicion the officer had that a turn violation had occurred.

Affirmed.

FOR THE COURT:

 

_____
Associate Justice

¶ 14. **REIBER, C.J., dissenting.** The plain language of § 1064(a) provides two alternatives to signal a turn: use of a mechanical or lighting turn signal or display of a hand signal. 23 V.S.A. § 1064(a) ("Before changing direction or materially slackening speed, a driver shall give warning of his or her intention with the hand signals as provided in section 1065 of this title, or with a mechanical or lighting device . . . ." (emphasis added)). In my view, where a statute provides two entirely independent and alternative methods of compliance, a police officer must have a reasonable suspicion that neither method was used to justify a stop. I respectfully dissent.

¶ 15. A legal stop is justified when there is a "reasonable and articulable suspicion" that a driver violated a motor-vehicle statute. State v. Harris, 2009 VT 73, ¶ 3, 186 Vt. 225, 980 A.2d

785. Reasonable suspicion does not require evidence of an actual violation but does require "more than an unparticularized suspicion or hunch" of a violation. State v. Hayes, 2016 VT 105, ¶ 9, 203 Vt. 153, 154 A.3d 964 (quotation omitted). This "requires some minimal level of objective justification for making the stop." State v. Lamb, 168 Vt. 194, 196, 720 A.2d 1101, 1102 (1998) (citing Alabama v. White, 496 U.S. 325, 329-30 (1990)). In a motion to suppress, once the defendant demonstrates that a seizure occurred, the State bears the burden of demonstrating that it was justified. Harris, 2009 VT 73, ¶ 6.

¶ 16. Here, the trooper was on duty on a dark night in January. The trooper's car was positioned such that when defendant approached the right-hand turn, the trooper was looking at the passenger side of defendant's car. The trooper testified that he did not see defendant use a turn signal to indicate an intent to turn. He also testified that he did not see whether defendant used a hand signal. Defendant's counsel asked the trooper if "[i]t was dark out that night" and the trooper responded that it was. Counsel next asked the trooper if he saw "whether [defendant] had rolled his window down and signaled with a hand signal for a right-hand turn." The trooper responded, "No, I did not see that." In addition, the State conceded that the trooper was unable to see whether defendant used a hand signal or not.

¶ 17. I disagree with the majority's holding that defendant's failure to use a turn signal alone provided a basis for the trooper to reasonably suspect that defendant violated § 1064(a). Our disagreement arises over how the reasonable-suspicion standard applies to a statute that provides two separate and distinct methods for compliance.[5] In my view, there can be no reasonable

---

[5] Section 1064(a) contains two methods for a driver to comply, creating independent elements. This structure distinguishes it from statutes that contain multiple elements forming a single path for compliance or violation. See, e.g., 13 V.S.A. § 1201(a) (providing that person commits burglary "if he or she enters any building or structure knowing that he or she is not licensed or privileged to do so, with the intent to commit a felony, petit larceny, simple assault, or unlawful mischief"). In this case, we consider only how our reasonable-suspicion standard applies to the former. My dispute with the majority is that it recognizes reasonable suspicion even though there is a means of full compliance with the statute for which the State has no evidence. In my

suspicion that defendant violated the statute without evidence regarding both alternatives. The State showed that there was reasonable suspicion that no turn signal was used but conceded that the trooper did not have the capacity to see whether defendant used a hand signal. Because the State did not meet its burden of presenting evidence regarding this alternative means of compliance, it failed to demonstrate that there was an articulable basis or "minimal level of objective justification" for the trooper's suspicion that defendant did not signal his turn. Lamb, 168 Vt. at 196, 720 A.2d at 1102. An officer cannot justify a stop merely based on his observation that one potential method of complying with a statute was not used without any evidence that the alternative, equally valid, method of compliance had also not been used.

¶ 18. Certainly, the State need not conclusively establish that a driver used neither a turn signal nor a hand signal. See Hayes, 2016 VT 105, ¶ 12 (explaining that conduct can support reasonable suspicion that traffic violation was committed, even if it does not prove that violation actually occurred); State v. Rutter, 2011 VT 13, ¶ 10, 189 Vt. 574, 15 A.3d 132 (mem.) (same). Nonetheless, the State must present some minimal amount of evidence suggesting that neither method was used. See Lamb, 168 Vt. at 196, 720 A.2d at 1102. Based on the majority's reasoning, if an officer was able to see a hand signal from a driver but not a turn signal on the car, the officer would have reasonable suspicion to stop the car based on the driver's failure to use a hand signal. Just as in this case, the officer would have evidence that the driver failed to use one method and no evidence as to the alternative. Without such evidence, these facts only show "an unparticularized suspicion or hunch" of a violation and do not satisfy the State's burden to justify the stop. Hayes, 2016 VT 105, ¶ 9.

¶ 19. Contrary to the majority's assertion, the lack of evidence in this case distinguishes it from Hayes and Rutter. In Hayes, the defendant challenged the strength of the evidence

_____

judgment, this can only be called a hunch, which does not justify a stop. Hayes, 2016 VT 105, ¶ 9.

supporting the officer's reasonable suspicion that the defendant was driving impaired. Id. ¶ 10. The officer testified that he observed "multiple indications of defendant's lack of attention" in a short period of time. Id. ¶ 12. Although none of the defendant's actions individually constituted a traffic violation, we held that the totality of the circumstances supported the officer's reasonable suspicion of impaired driving. Id.

¶ 20. In Rutter, again the defendant challenged the strength of the evidence underlying the suspicion that the defendant was violating the law by not driving his vehicle "with reasonable safety." 2011 VT 13, ¶¶ 9-10. The officer testified that as he watched the defendant turn a corner, the defendant screeched his tires and revved his engine. Id. ¶ 10. Because the road was dry and clear of snow and ice, we held that the totality of the circumstances supported the officer's reasonable suspicion that the defendant did not have reasonable control of his vehicle, even if the facts did not conclusively prove a motor-vehicle violation. Id. ¶¶ 10-11.

¶ 21. Both cases hinged on whether the evidence presented by the State supported a finding that there was reasonable basis to suspect a violation even if no motor-vehicle violation was proven. This case, in contrast, involves the absence of evidence regarding defendant's compliance with one means of satisfying the statute, not the weight or credibility of the evidence presented. Similarly, the Ohio cases cited by the majority are also not on point. In State v. Matheney, the officer expressly "testified that he did not observe [defendant] use any sort of hand signal." 2016-Ohio-7690, ¶ 18 (Ct. App.). Likewise, in State v. Williamson, the officer testified that "he did not have a clear view of the driver's side window," but nevertheless "did not see any hand signals used." 2002-Ohio-7320, ¶ 8 (Ct. App.). The defendant countered that she "made a hand signal every time she turned."[6] Id. ¶ 9. In both cases, the courts considered the weight and

---

[6] The majority characterizes the Williamson defendant's testimony that she used a hand signal as a potential "defense to a charge for failure to signal," but concludes that this does not defeat the existence of reasonable suspicion for the stop. Ante, ¶ 11 n.3. I disagree with this characterization. Under our law, use of a hand signal is not a defense to a failure to use a turn

11

credibility of the testimony, and ultimately concluded that the officers had reasonable suspicion to justify a stop. By contrast, here, the court had no evidence to weigh regarding defendant's use of a hand signal, and instead relied merely on conjecture.

¶ 22. Finally, the fact that § 1064(a) provides two methods of compliance distinguishes this case from State v. Thompson, 175 Vt. 470, 816 A.2d 550 (2002) (mem.). Thompson involved two separate defendants and two traffic stops where officers observed one vehicle without a bumper and another vehicle without a driver's side rearview mirror. In both instances, it was dark, and the officers could not see whether the vehicles had current windshield inspection certificates. Id. at 472, 816 A.2d at 553. Because the Vermont Periodic Inspection Manual required vehicles to have a bumper and a side rearview mirror to pass inspection, this Court determined that on observation of these defects, the officers had reasonable suspicion of a motor-vehicle violation sufficient to stop the vehicles. Id.; see 23 V.S.A. § 1222(c) (requiring inspection and valid certification of inspection).

¶ 23. Relying on Thompson, the majority concludes that the trooper in this case had reasonable suspicion that defendant failed to properly signal his turn because he saw defendant fail to use a turn signal. This conclusion confuses the difference in structure of the statute in Thompson and § 1064(a). The inspection requirement in § 1222(c) does not contain alternative methods of compliance; vehicles must be inspected, and drivers must display a valid windshield certificate as proof. Lack of proper equipment on a vehicle was in that case simply one piece of evidence suggesting that a vehicle had not passed inspection. Under § 1064(a), however, using a hand signal

---

signal; it is an equally valid method of complying with § 1064(a). The failure to use a hand signal, like the failure to use a turn signal, is thus an essential element of a violation. I agree that a violation need not be conclusively proven to justify a stop, but that does not defeat the requirement that the officer must have a "[r]easonable and articulable suspicion," beyond an "unparticularized suspicion or hunch," that neither means of compliance was used. Hayes, 2016 VT 105, ¶ 9 (quotation omitted).

is an independent alternative. Without any evidence regarding defendant's use of a hand signal, the State's evidence is insufficient to suggest a violation.

¶ 24. Under the plain language of § 1064(a), a driver may legally use either turn signals or hand signals, regardless of the time of day or weather conditions. A hand signal may be unusual, less convenient, and less safe under certain circumstances, but "[o]ur role is to interpret the law to give effect to the Legislature's intent, not to impose our policy preferences on the public." <u>Doyle v. City of Burlington Police Dep't</u>, 2019 VT 66, ¶ 12, __ Vt. __, 219 A.3d 326 (quotation omitted). Whether our motor-vehicle code should permit drivers to use a hand signal at night or in inclement weather to indicate a change in direction is a question for the Legislature to decide, not this Court. Because the statute currently permits two options for compliance, I would hold that an officer must have a reasonable suspicion that neither method of compliance was used before a stop can be made.

¶ 25. I am authorized to state that Justice Robinson joins this dissent.

Chief Justice

13