932 A.2d 1039 (2007)
2007 VT 68
State of VERMONT
v.
Timothy PRATT.
Nos. 2005-312, 2006-069.
Supreme Court of Vermont.
July 20, 2007.
Paul Finnerty, Washington County Deputy State's Attorney, Barre, for Plaintiff-Appellee.
Stephen J. Craddock, Berlin, for Defendant-Appellant.
Present: REIBER, C.J., DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ.
*1040 ¶ 1. DOOLEY, J.
Defendant appeals the civil suspension of his driver's license, arguing that the district court erred by denying his motion to suppress because there was no lawful basis for the stop leading to his arrest. We affirm.
¶ 2. Early in the morning of April 21, 2005, a state trooper on patrol approached defendant's vehicle from behind on Interstate 89 in Waterbury, Vermont. After noticing defendant drift back and forth within his lane, the trooper activated his in-car video camera and followed the vehicle for several miles. During this period, defendant's vehicle continued to drift within its lane. The trooper eventually stopped defendant and approached the vehicle. Noticing a faint smell of alcohol, the trooper questioned defendant and asked him to perform field sobriety tests. Defendant's performance indicated he might be under the influence of alcohol. When defendant refused to take a preliminary breath test, the trooper arrested him on suspicion of driving under the influence (DUI). He was charged with DUI, and his license was suspended after a Datamaster result showed a blood-alcohol concentration of .102.
¶ 3. In both his criminal case and his civil suspension case, defendant filed a motion to suppress all evidence obtained as a result of the stop. Defendant argued that the officer did not have reasonable suspicion necessary to stop his vehicle. The trial court held a hearing on the motion to suppress. At the hearing, the state trooper testified that he observed defendant's car move from the center line to the fog line two times before he activated his in-car camera and three or four more times afterwards. The trooper explained that "based on [his] training and experience" he recognized this type of drifting as a sign of impairment. The district court found the trooper's testimony credible and consistent with the video footage. The court concluded that the evidence "of 5-6 drifting movements within a single lane of travel over the course of some 5 miles provide[d] a sufficient basis of suspicion to justify the stop of defendant's vehicle." Consequently, the court denied defendant's motion to suppress.
¶ 4. On appeal, defendant argues that the district court erred in denying his motion to suppress because the state trooper did not have a lawful basis to stop him. A motion to suppress involves a mixed question of law and fact. State v. Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. We will uphold the trial court's findings of fact unless they are clearly erroneous. Id. "The question of whether the facts as found met the proper standard to justify a stop is one of law." Id. In this case, we conclude that the court's findings are supported by the evidence and that these findings support the conclusion that the officer had a reasonable suspicion of criminal activity, namely that defendant was driving while intoxicated.
¶ 5. A legal investigatory stop is justified if a police officer has a reasonable and articulable suspicion of criminal activity. State v. Bruno, 157 Vt. 6, 11, 595 A.2d 272, 275 (1991). "The officer must have more than an unparticularized suspicion or hunch of criminal activity, but needs considerably less than proof of wrongdoing by a preponderance of the evidence." Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. Reasonable suspicion is assessed by examining the totality of the circumstances. State v. Lamb, 168 Vt. 194, 196-97, 720 A.2d 1101, 1103 (1998). As such, we have upheld investigatory stops for suspicion of DUI based on erratic driving. See State v. Boyea, 171 Vt. 401, 410, 765 A.2d 862, 868 (2000) (relying on *1041 information that vehicle was acting "erratically"  defined in dictionary as wandering or without certain course  to support reasonable suspicion that driver might be intoxicated); Bruno, 157 Vt. at 11, 595 A.2d at 275 (concluding that officer's observation of defendant drifting in his lane, pulling off road, and then operating his vehicle briefly without headlights was sufficient to give rise to reasonable and articulable suspicion of DUI). The reasonableness of the stop is assessed by "[b]alancing the public's interest in safety against the relatively minimal intrusion posed by a brief investigative detention." Boyea, 171 Vt. at 410, 765 A.2d at 868 (explaining that the serious threat to public safety posed by intoxicated drivers justified officer's stop, given report that defendant was driving erratically and the minimal intrusion posed by stop).
¶ 6. Here, the trooper observed defendant drift back and forth within his lane several times over a distance of approximately five miles. Defendant argues that drifting within a lane of traffic is not a traffic violation and, thus, cannot serve as the basis for a stop. We decline to adopt such a bright-line rule. Although we agree that most of our decisions involve instances in which the stop is justified by a violation of a law specifically regulating safe operation or the physical condition of a vehicle, there is no requirement that an officer, having reasonable suspicion of DUI, must also have cause to believe the operator has committed another offense. As discussed above, reasonable suspicion of driving while intoxicated is assessed by examining the totality of the circumstances and consequently may be supported by evidence of erratic driving, whether or not it amounts to a specific traffic violation. Further, we rely on the expertise of the officer in recognizing signs of impaired operation.
¶ 7. In upholding the district court's decision that reasonable suspicion of impaired operation existed in this case, we note that the overwhelming weight of authority from other jurisdictions holds that repeated intra-lane weaving can create reasonable suspicion of impaired operation. See Gaddis ex rel. Gaddis v. Redford Twp., 364 F.3d 763, 771 (6th Cir.2004) (concluding that officer had reasonable suspicion of drunk driving where defendant "weaved twice to the left to touch the dividing line in a fairly short span"); People v. Greco, 336 Ill.App.3d 253, 270 Ill. Dec. 626, 783 N.E.2d 201, 204-05 (2003) (holding that "erratic driving, including weaving within a single lane, is sufficient to justify a traffic stop"; collecting cases from Illinois and many other jurisdictions, and observing that "research reveals a general consensus that weaving within a single lane may be a basis for a valid traffic stop"); State v. Tompkins, 507 N.W.2d 736, 737, 739 (Iowa Ct.App.1993) (concluding that weaving several times within a mile from center line to right boundary line of road created reasonable suspicion of impairment; collecting cases from other jurisdictions); State v. Field, 847 P.2d 1280, 1281-82, 1284-85 (1993) (concluding that weaving within lane four times over several city blocks created reasonable suspicion; collecting cases). Decisions superficially to the contrary tend to involve isolated incidents of conduct or conduct less clearly related to impairment. See State v. Caron, 534 A.2d 978, 979 (Me.1987) (holding officer's observation of "brief, one time straddling of the center line of an undivided highway" did not justify stop (emphasis added)).
¶ 8. Contrary to the dissent's claim, we do not announce a "bright line" rule that intra-lane weaving creates reasonable suspicion to stop in all cases. Instead, we continue to hold that reasonable suspicion must be based on the totality of the circumstances. *1042 See Lamb, 168 Vt. at 196-97, 720 A.2d at 1103. Thus, in reaching our decision, we do not quarrel with the point of some of the dissent's cases that slight degrees of intra-lane weaving alone do not justify a stop. See Warrick v. Comm'r of Pub. Safety, 374 N.W.2d 585, 585-86 (Minn.Ct.App.1985) (finding no reasonable suspicion where intra-lane weaving was "`subtle' and involving inches"); Salter v. North Dakota Dep't of Transp., 505 N.W.2d 111, 112, 114 (N.D.1993) (finding no reasonable suspicion where intra-lane weaving involved "slight movement back and forth"). Nor do we quarrel with the dissent's cases that hold that a bright-line rule is inappropriate. See State v. Otto, 566 N.W.2d 509, 511 (Iowa 1997); State v. Post, 2007 WI 60, ¶ 18, 733 N.W.2d 634.[1] Indeed, we believe it is the dissent that is looking for a hard rule that intra-lane weaving alone cannot create reasonable suspicion of impairment. We stand by our assessment that the overwhelming majority of the precedents from other jurisdictions support our decision.
¶ 9. In this case the officer testified that the intra-lane weaving he observed showed that there was a reasonable suspicion of impaired operation, based on his training and experience. The trial judge relied on his testimony,[2] along with the videotape showing defendant's operation, to find that there was reasonable suspicion of impaired operation. Based on our prior decisions and the authority from around the country, we affirm that decision.
Affirmed.
¶ 10. JOHNSON, J., dissenting.
While otherwise innocent behavior might sometimes appear suspicious to a trained police observer, the standard for a constitutionally permissible stop of a vehicle nevertheless remains that of ordinary common experience. As Chief Justice Burger once observed, "[m]uch as a `bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). In upholding the investigatory detention here, based on nothing more than a vehicle's drifting within its lane several times over the course of five miles, I fear the majority has opted for a simple, bright-line rule over common sense and ordinary human experience. I therefore respectfully dissent.
¶ 11. As the majority accurately states, the investigating officer here initially observed *1043 defendant's vehicle drift twice within its lane over a distance of about two miles while traveling southbound in the right-hand lane of Interstate 89. The officer pulled in behind the vehicle, activated his video camera, and followed for another three miles, observing the vehicle drift slowly several more times between the center line and the fog line. The officer acknowledged that the vehicle did not jerk or swerve abruptly, and further acknowledged that drifting within one's lane of travel is normal for most drivers. Indeed, when asked how, in his experience, the defendant's driving "differ[ed] from any other driver who is on the road, day or night?" the officer admitted: "It doesn't. I stopped him and he was impaired, that's the only difference."
¶ 12. As the majority here also correctly observes, most jurisdictions have held that repeated weaving or drifting within a single lane of travel may support a reasonable suspicion of impaired operation. People v. Greco, 336 Ill.App.3d 253, 270 Ill. Dec. 626, 783 N.E.2d 201, 205 (2003) (noting the "general consensus that weaving within a single lane may be a basis for a valid stop"). Some courts have even suggested that such behavior, standing alone, may give rise to the reasonable suspicion necessary to support an investigative detention. Id. at 204 (stating that "erratic driving, including weaving within a single lane, is sufficient to justify a traffic stop"). Many, if not most courts, however, have relied on intra-lane weaving as one of several factors that cumulatively may support a reasonable suspicion of impaired driving. Indeed, in Gaddis ex rel. Gaddis v. Redford Township, 364 F.3d 763 (6th Cir. 2004)  one of the four out-of-state cases on which the majority relies  the court of appeals emphasized that its finding of reasonable suspicion was based on several factors, including the officer's observation that the defendant weaved twice within a few hundred feet, appeared to be leaning or slumped to the side, and was driving more slowly than other cars on the road. Id. at 771. The majority also relies on State v. Tompkins, 507 N.W.2d 736 (Iowa Ct.App.1993), but here again it is worth noting that the Iowa Supreme Court carefully limited that decision in a subsequent holding as follows: "We do not believe Tompkins should be read to hold that observation of a vehicle weaving within one's own lane of traffic will always give rise to reasonable suspicion for police to execute a stop of the vehicle." State v. Otto, 566 N.W.2d 509. 511 (Iowa 1997) (emphasis added). Otto upheld the vehicle stop in question on the strength of multiple factors, including evidence that the subject vehicle was traveling well below the speed limit, changing speeds erratically, veering from left to right at sharp angles, and constantly weaving back and forth within its lane over the course of three and a half miles. Id. at 510-11; see also Veal v. State, 273 Ga.App. 47, 614 S.E.2d 143, 145 (2005) (upholding vehicle stop where vehicle was weaving within its lane and traveling thirty miles per hour below the speed limit).
¶ 13. Where other factors are not present, courts have been particularly careful to examine closely the nature of the intra-lane movement, declining in some cases to find reasonable suspicion when the movement was neither pronounced nor unusually repetitive. In State v. Binette, 33 S.W.3d 215 (Tenn.2000), for example, the arresting officer stopped a vehicle after observing it weave back and forth within its lane several times. The Tennessee Supreme Court refused to validate the stop, observing that there was no evidence of either "pronounced weaving or hard swerving" or unusual or "exaggerated" movements by the vehicle within its lane. Id. at 219. Quoting the lower court's dissenting *1044 opinion, the Tennessee court observed that "it is the rare motorist indeed who can travel for several miles without occasionally varying speed unnecessarily, [or] moving laterally from time to time in the motorist's own lane." Id. The court thus concluded that "[w]hile [the defendant] did move laterally . . . within his lane while operating his vehicle, we find that his movement was not pronounced, and therefore did not give rise to reasonable suspicion that he was under the influence of an intoxicant." Id. at 220; see also United States v. Lyons, 7 F.3d 973, 976 (10th Cir.1993) (finding evidence that vehicle weaved three or four times within its lane over the course of two miles was insufficient standing alone to uphold investigative detention), overruled on other grounds by United States v. Botero-Ospina, 71 F.3d 783, 786-87 (10th Cir.1995); Warrick v. Comm'r of Pub. Safety, 374 N.W.2d 585, 585-86 (Minn.Ct.App.1985) (finding "subtle" weaving within lane over course of five miles did not justify investigatory detention); Salter v. North Dakota Dep't of Transp., 505 N.W.2d 111, 113 (N.D.1993) (invalidating stop premised on movement of vehicle within its own lane where there was "no evidence of erratic movement, sharp veering, or any of the other factors noted in prior cases"). Conversely, courts have not hesitated to uphold investigative detentions where there was evidence that a vehicle's movements, even within a single lane, were sufficiently erratic, pronounced, or prolonged to raise a reasonable suspicion of impaired driving. See, e.g., People v. Perez, 175 Cal.App.3d Supp. 8, 221 Cal.Rptr. 776, 778 (Ct.App. 1985) (concluding that "pronounced weaving which continued for about three-quarters of a mile" supported motor vehicle stop); Roberts v. State, 732 So.2d 1127, 1128 (Fla.Dist.Ct.App.1999) (upholding stop where vehicle was "weaving significantly from side to side within the lane"); Neal v. Commonwealth, 27 Va.App. 233, 498 S.E.2d 422, 423, 425 (1998) (upholding stop where evidence showed that, over course of one-half mile, defendant's vehicle was "constantly moving from side to side in its lane" rather than an "isolated instance of mild weaving").
¶ 14. In a recent decision closely on point, State v. Post, 2007 WI 60, 733 N.W.2d 634, the Wisconsin Supreme Court emphatically rejected the state's appeal for a bright-line rule, holding instead that "weaving within a single lane of traffic does not alone give rise to the reasonable suspicion necessary to conduct an investigative stop of a vehicle." Id. ¶¶ 2, 14 ("[W]e reject the bright-line rule that repeated weaving within a single lane alone gives rise to reasonable suspicion." (emphasis added)). In so holding, the court underscored the traditional principle that reasonable suspicion must be determined from the totality of the circumstances, and observed in this regard that "repeated weaving within a single lane" was a highly "malleable" concept which could include much otherwise "innocent conduct." Id. ¶ 20. Indeed, echoing the court in Binette, the Wisconsin court recognized the "universality of drivers' `weaving' in their lanes," id. (quoting Lyons, 7 F.3d at 976), and thus concluded that upholding a stop based solely on such evidence without examining the precise nature of the vehicle's movement and the surrounding circumstances could an "subject many innocent people to an investigation." Id. While acknowledging that the case was close, the court ultimately upheld the stop based on evidence that the defendant's vehicle swerved continuously from the mid-line to the parking lane in a broadly sweeping arch inside a twenty-four-foot-wide lane, which was more than twice the width of the normal traffic lane. Id. ¶¶ 36-37.
*1045 ¶ 15. Assessed in light of these standards and authorities, it is inescapable that the evidence here does not rise to the level necessary to support an objectively reasonable, articulable suspicion of criminal activity. As noted, the investigating officer testified that he observed defendant's vehicle drift "slowly" within its lane perhaps five or six times over a distance of five miles. Under further questioning, he specifically denied that the vehicle "jerked" or "swerved" abruptly at any point. Indeed, the officer candidly admitted that defendant's driving did not "differ from any other driver," acknowledging, as the court in Lyons put it, the "universality" of drivers weaving within their lanes. 7 F.3d at 976. In short, the officer observed nothing to distinguish defendant's occasional drifting within his lane of travel from that of other innocent drivers, or to indicate that it was the result of impaired operation.
¶ 16. The majority's conclusion to the contrary rests on the simple but unsustainable assumption that drifting within one's lane of traffic is sufficient, standing alone, to support a reasonable suspicion of impaired driving. As many other courts have recognized, however, that assumption  and the bright-line rule which follows  belies common experience. Indeed, under such a rule a significant portion of the driving public could soon expect to be subject to unforseen invasions of privacy on virtually a daily basis. To avoid this unacceptable result, I would reverse the judgment of the trial court, and grant defendant's motion to suppress. I am authorized to state that Justice Skoglund joins in this dissent.
NOTES
[1] We believe that both the Iowa and Wisconsin courts would affirm on the facts of this case. The Iowa court cited State v. Dorendorf, 359 N.W.2d 115 (N.D.1984), as its example of an instance in which intra-lane weaving could properly justify a stop. Dorendorf is very similar to this case, especially in its reliance on the experience and training of the arresting officers to recognize the signs of impaired operation. Id. at 117. In addition, the Wisconsin Supreme Court rejected defendant's argument that intra-lane weaving cannot justify reasonable suspicion where lateral movements are not "erratic, unsafe, or illegal." Post, 2007 WI 60, ¶ 26, 733 N.W.2d 634. In giving examples of when intra-lane weaving would not provide reasonable suspicion, it cited cases in which the weaving was not significant like Salter and Warrick. Id. ¶ 19 n. 5.
[2] Fact-finding is for the trial court and not this Court. Simoneau, 2003 VT 83, ¶ 14, 176 Vt. 15, 833 A.2d 1280. The dissent finds that the officer admitted that defendant's driving did not differ from any other driver on the road based on one of the arresting officer's answers during cross-examination. The trial court made no such finding, and because that "admission" would be wholly inconsistent with the rest of the officer's testimony, we conclude that the court's findings are not clearly erroneous.