*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-129

OCTOBER TERM, 2013

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Chittenden Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Jack Wallace | } | DOCKET NOS. 4485-11-12 Cncr & |
| | | 517-11-12 Cncs |

Trial Judge: Michael S. Kupersmith

In the above-entitled cause, the Clerk will enter:

Defendant appeals from a decision of the superior court, criminal division, denying his motion to suppress in connection with a charge of driving under the influence of intoxicating liquor (DUI) and the civil suspension of his driver's license. We affirm.

On October 23, 2012, defendant was arrested for DUI, in violation of 23 V.S.A. § 1201(a)(1). Before his civil suspension hearing, he filed two motions to suppress for purposes of both the civil suspension and criminal proceedings. The motions challenged the legality of the stop and the admissibility of the breath test on grounds that the arresting officer did not allow him to contact a public defender within the thirty-minute period set by statute. The superior court held a hearing and then issued a decision denying the motions. On March 13, 2013, after the court issued its decision, defendant entered into a conditional plea on the criminal charge, reserving his right to appeal the denial of his motions to suppress. On the same day, he filed a joint notice of appeal from the civil suspension and the criminal conviction.

On appeal, defendant first argues that the arresting officer refused to allow him to call a public defender before the expiration of the thirty-minute period established in 23 V.S.A. § 1202(c), thereby rendering his breath test involuntary and inadmissible. We find no merit to this argument. As provided in § 1202(c), a person who is asked to take an evidentiary breath test has a right to consult with an attorney; however, the person must decide whether to submit to the test "within a reasonable time and no later than 30 minutes from the time of the initial attempt to contact the attorney" and must make that decision "at the expiration of the 30 minutes regardless of whether a consultation took place." Thus, as we stated in State v. Macie, 146 Vt. 28, 31 (1985), "the statutory thirty minutes is the maximum 'reasonable time,' not a minimum, in which to refuse the breath test."

Here, the arresting officer advised defendant that he had a right to contact either a private attorney or a public defender to consult on whether to take an evidentiary breath test. Defendant elected to call his private attorney, and at that point, 12:39 a.m., the officer informed him that the thirty-minute period had started. Defendant left a voicemail with his attorney at 12:41. At

12:46, the officer informed defendant that he could talk to a public defender for legal advice without having to use that attorney later. Defendant responded that he would give his attorney a couple more minutes to call him back. At 12:53, the officer informed defendant that he had fifteen minutes left to decide whether to take the breath test, at which point he would have to make a decision. The officer later informed defendant at 1:00 that he had nine minutes left, and at 1:08 that he had one minute left. With less than one minute left, defendant asked whether the choice was to call someone provided by the officer. The officer responded that he would have to decide whether to take the test. Defendant asked what the other options were, and the officer stated that there were no other options—it would be simply a yes or no. At 1:09, defendant elected to submit to the test.

These facts demonstrate that defendant was given a reasonable amount of time to consult with an attorney, but ultimately was unable to do so because of his decision to wait to talk to his own attorney until it was too late to consult with a public defender. See State v. West, 151 Vt. 140, 144-45 (1988) ("The statutory mandate is fulfilled when reasonable efforts are made to allow an arrestee to consult privately with counsel."). Defendant complains that he still had time left to talk to a public defender when he asked what his options were near the expiration of the thirty-minute period, but as the trial court found, the time remaining to defendant when he made his last-minute query was insufficient to contact and consult with an attorney before the maximum thirty-minute period expired. Moreover, his last-minute query did not plainly articulate a desire to speak to a public defender, and the officer did not explicitly deny such a request.

Next, defendant argues that the court erred by not granting his motion to suppress based on the unlawfulness of the stop. The trial court ruled that the stop was justified based on the officer's observations that defendant was speeding and that he drove his vehicle on the yellow centerline on several occasions. Defendant argues on appeal that: (1) because his vehicle never crossed the centerline, the officer could not have lawfully stopped him for violating 23 V.S.A. § 1031(a) (requiring vehicles to drive on right side of roadway); (2) his operation of the vehicle did not provide grounds for suspicion of drunk driving; and (3) he could not have been stopped for speeding because the officer testified that he did not stop defendant for speeding.

"In reviewing a trial court's decision on a motion to suppress, the court's findings of fact must be upheld unless they are clearly erroneous." State v. Davis, 2007 VT 71, ¶ 5, 182 Vt. 573 (mem.). This Court then determines the legal question of whether the facts as found by the trial court meet the proper standard to justify the stop. Id. A police officer may make an investigatory stop of a vehicle based on reasonable and articulable suspicion—more than unparticularized suspicion but considerably less than proof of wrongdoing by a preponderance of the evidence—of criminal activity or a traffic violation. Id. ¶ 7. "In determining the legality of a stop, courts do not attempt to divine the arresting officer's actual subjective motivation for making the stop; rather, they consider from an objective standpoint whether, given all of the circumstances, the officer had a reasonable and articulable suspicion of wrongdoing." State v. Lussier, 171 Vt. 19, 23-24 (2000). This standard allows officers to draw on their own experience and specialized training to determine whether criminal activity has occurred. Davis, 2007 VT 7, ¶ 7. We have held that intra-lane weaving may, but does not necessarily, create a reasonable suspicion to stop a vehicle; rather, reasonable suspicion is based on the totality of the circumstances, with the findings of fact remaining within the exclusive province of the trial court. Id. ¶ 8.

2

We conclude that the record supports the court's determination that the stop was lawful. The officer testified that he observed defendant's vehicle touch the yellow centerline on several occasions for the one or two miles that the officer followed the vehicle. After admitting into evidence and viewing the videotape of the stop, the court found that the officer had in fact made such observations. The officer further testified that touching the centerline is a sign of impairment based on his experience and training. We agree with the trial court that these facts justify the stop of defendant's vehicle, even if defendant's operation of the vehicle did not amount to a traffic violation. See State v. Pratt, 2007 VT 68, ¶ 9, 182 Vt. 165 (concluding that intra-lane weaving on several occasions over five miles was sufficient grounds for lawful stop). The intra-lane weaving of defendant's vehicle may not have been dramatic, but the fact that his vehicle touched the centerline on several occasions provided reasonable suspicion of impaired operation.

Affirmed.

BY THE COURT:

_____
John A. Dooley, Associate Justice

_____
Marilyn S. Skoglund, Associate Justice

_____
Beth Robinson, Associate Justice

3