*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-315

SEPTEMBER TERM, 2016

| | | |
|---|---|---|
| State of Vermont | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Lamoille Unit, |
| v. | } | Criminal Division |
| | } | |
| | } | |
| Dzina Brakarenka | } | DOCKET NO. 139-3-14 Lecr |

Trial Judge: Timothy B. Tomasi

In the above-entitled cause, the Clerk will enter:

Defendant appeals from her conviction of driving under the influence (DUI) following a jury trial. She argues that the court erred in denying several pretrial motions to suppress. We affirm.

Defendant was arrested on suspicion of DUI following an early morning traffic stop on the Mountain Road in Stowe. Defendant moved to suppress the evidence against her. In particular, she argued that the officer's stop was not supported by reasonable suspicion, that the officer's exit order was not supported by reasonable suspicion, and that the Datamaster results should have been suppressed because the machine was not reliable.

Following several hearings, the court denied defendant's motions on the record. The court first found that the officer's stop of defendant was supported by reasonable suspicion on the basis of defendant's left-hand turn from the Mountain Road onto Luce Hill Road without using a left-turn signal. While defendant argued that she did not really make a left-hand turn, the court credited the officer's testimony that Luce Hill Road was at least a forty-five degree turn off of the Mountain Road and a significant change in direction from the main road such that a turn signal was required. The court also rejected defendant's assertion that the stop was inappropriate because the officer's "real reason" for stopping the car was suspicion of DUI. Citing State v. Rutter, 2011 VT 13, 189 Vt. 574 (mem.), the court explained that the officer's subjective intent and motive were not significant factors to be considered, as long as there was an objective basis for the stop.

Turning to the exit order, the court found it justified by the officer's reasonable suspicion of DUI. The court pointed to defendant's erratic operation—namely stopping in the middle of the Mountain Road for approximately a minute after she pulled out of a local restaurant, and then failing to use a turn signal when she turned left off of the Mountain Road, the officer's observation of defendant's bloodshot and watery eyes, the smell of alcohol emanating from the vehicle, and defendant's admission to consuming two beers. The court found this evidence more than sufficient to support an exit request and denied defendant's motion to suppress and dismiss.

The court also denied defendant's motion to suppress the Datamaster results. Defendant had presented testimony from Darcy Richardson, a forensic toxicologist who testified that she had concerns about the particular Datamaster device's accuracy at the time of the test. She based her concerns on the fact that several weeks after the test in question, the calibration of the instrument failed and it had to be pulled from the field, recalibrated, and recertified. She noted that prior to the defendant's test the detector voltage of the machine was quite high—close to the maximum tolerable level. She surmised that this voltage problem, which was existing at the time of defendant's test, could have been one of the issues that progressed and ultimately caused the calibration error. If so, although the machine did not deliver an error message until a couple of weeks after defendant's test, the problem that gave rise to that message existed at the time of defendant's test and called into question the accuracy of defendant's test. The State offered testimony from two experts who testified that the calibration error that ultimately caused the machine to be taken out of service was not linked to the detector voltage.

The court declined to suppress the Datamaster results. The court first concluded that the test was done according to the rules of the Department of Public Safety and its results were therefore admissible. It noted that defendant's expert did not testify that the test was not performed according to methods approved by the Department of Public Safety, and that even if she had, the State's testimony was more persuasive. The court also evaluated defendant's expert's testimony and the State's expert testimony and concluded that the test was reliable. The court acknowledged that defendant's expert's testimony could be considered by a jury in assessing the weight to give to the breath test, but held that the test was admissible.

Following a trial, the jury found defendant guilty of DUI, and this appeal followed.

Defendant first argues that the court erred in denying her motion to suppress. According to defendant, the court made factual findings against the weight of the evidence regarding the physical layout of the intersection of the Mountain Road and Luce Hill Road. Defendant asserts that the officer testified that she "proceeded straight" onto Luce Hill Road, but then subsequently testified that it was a forty-five degree change of direction. Defendant argues that the court should have credited the officer's first statement and disregarded the latter part of his testimony.

In reviewing a denial of a motion to suppress, we will uphold the trial court's findings unless they are clearly erroneous; we review de novo whether the facts meet the proper standard to justify a stop. Rutter, 2011 VT 13, ¶ 6. "Reasonable and articulable suspicions of motor-vehicle violations are sufficient to justify stops." State v. Harris, 2009 VT 73, ¶ 3, 186 Vt. 225. The relevant question is not whether a motor vehicle violation actually occurred, but instead "whether the officer had a reasonable basis to suspect that a motor vehicle violation was taking place." Rutter, 2011 VT 13, ¶ 10.

Here, the court found that defendant made a 45-degree left-hand turn off the road on which she was traveling and onto a different road, which required use of a turn signal. See 23 V.S.A. § 1064(d) (providing that driver must signal his or her intention to turn right or left "continuously during not less than the last 100 feet traveled by the vehicle before turning"). This finding was not clearly erroneous. See State v. Young, 2010 VT 97, ¶ 9, 189 Vt. 37 (explaining that Supreme Court gives "substantial deference" to trial court's findings of fact and will uphold them "unless, taking the evidence in the light most favorable to the prevailing party, and excluding the effect of modifying evidence, there is no reasonable or credible evidence to support them" (citation omitted)). The officer testified to this effect, and the court credited his testimony. See id. (recognizing that it is "the province of the trial court to assess witness credibility and the weight

2

of the evidence"). To the extent the angle of the turn was relevant, the court was not compelled to reject the officer's testimony that the turn onto Luce Hill Road was approximately forty-five degrees off the Mountain Road just because that officer at one point described the course from the Mountain Road onto Luce Hill road as "essentially straight." As noted above, this Court does not evaluate the credibility of witnesses on appeal, nor do we reweigh the evidence. State v. Reynolds, 2016 VT 43, ¶ 28 (recognizing that Supreme Court defers to trial court's assessment of the credibility of witnesses and the weight of the evidence).

More important, the trial court's crucial finding that defendant's turn required a significant change in direction "from the main road" was supported by the evidence. The fact that defendant departed from the path of travel on the road on which she was traveling to continue on a different road heading a different direction was a more significant indicia of a turn than the exact angle of her change in direction. The officer explained at the hearing that the Mountain Road curves right as one proceeds up the hill, and Luce Hill meets the Mountain Road from the left on the outside of the curve. There was no dispute about the fact that in order to proceed on Luce Hill Road, defendant had to depart from the course of travel of the road she was on and cross a lane of oncoming traffic. For that reason, this case is not like State v. Hutchins, 2015 VT 38, 198 Vt. 431 cited by defendant. In that case, after a stop, defendant proceeded across an intersecting road onto a road that met the intersection at an angle. We concluded that the defendant had essentially travelled straight through an intersection, following "a single curving road." Id. ¶ 5. Thus, because there was no turn, no turn signal was required. Here, defendant departed from the main roadway on which she had been traveling, crossed a lane of oncoming traffic, and proceeded down a different road. Wholly apart from specific measurements of the angle of the turn, these facts are sufficient to support the trial court's finding that defendant made a turn without signaling.

Defendant next argues that the court erred in concluding that the officer had reasonable grounds to ask her to exit her car. She suggests that because she was not slurring her words, as in one of the cases cited by the trial court, the exit order was not justified. Defendant also contends that, should this Court find an absence of erratic operation, the exit order could not be based on the odor of alcohol emanating from her car alone.

We reject these arguments. The court did not err in concluding that the officer had a reasonable and articulable suspicion of DUI to support the exit order. We have never required that one particular sign of intoxication, such as slurred speech, be shown before an exit order is justified. Instead, "[r]easonable suspicion is assessed by examining the totality of the circumstances" while "balancing the public's interest in safety against the relatively minimal intrusion posed by a brief investigatory detention." State v. Pratt, 2007 VT 68, ¶ 5, 182 Vt. 165 (quotation omitted). In this case, the officer observed erratic driving, and after stopping defendant, he saw her watery and bloodshot eyes and smelled alcohol. Defendant admitted to consuming alcohol. This evidence amply supports the court's conclusion that the exit order was justified. See, e.g., State v. Santimore, 2009 VT 104, ¶ 8, 186 Vt. 638 (mem.) (holding that "[i]ndicia of intoxication, such as an officer's detection of the odor of alcohol emanating from a driver as well as observation of a driver's watery and bloodshot eyes, are sufficient to establish reasonable suspicion of DUI").

Finally, defendant asserts that the court erred in refusing to exclude her breath-test results as unreliable.[*] She maintains that because the breath-test machine had a recent history of abnormally high voltage readings, culminating in an error message two weeks after it was used, the court should have determined that the Datamaster result was not reliable.

Defendant misapprehends the legally relevant question. This Court has held that the threshold for admissibility, set by 23 V.S.A. § 1203(d), is whether the analysis of the challenged sample was performed by an instrument that met the applicable performance standards. State v. Burnett, 2013 VT 113, ¶¶ 16-17, 195 Vt. 277. The trial court had sufficient evidence from which it could infer that the test was performed "in compliance with rules adopted by the Department of Public Safety." 23 V.S.A. § 1203(d). As the trial court noted, defendant's expert testimony did not even address this threshold issue. To the extent defendant's expert testified that the machine was nonetheless unreliable at the time of the test, the evidence may influence the weight a factfinder assigns to the test result, but does not render the test result inadmissible. Burnett, 2013 VT 113, ¶ 20 ("Thus, while defendant's expert's testimony was relevant to show that the test result was unreliable in this case, it did not undermine the admissibility of those results.")

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice

---

[*] As part of this argument, defendant asks this Court to overturn the judgment in favor of the State in her civil suspension proceedings. Defendant did not appeal from the judgment in the civil suspension proceedings and that decision is not before us.