The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 29, 2018

**2018COA167**

**No. 16CA0749 People v. Johnston — Constitutional Law —
Fourth Amendment — Searches and Seizures — Motor Vehicles**

In this intoxicated driving case, a division of the court of
appeals concludes that, under the totality of the circumstances, a
police officer's observation of a vehicle weaving continuously within
its lane for over five miles was sufficient to create a reasonable
suspicion that the driver was intoxicated.

COLORADO COURT OF APPEALS                           **2018COA167**

Court of Appeals No. 16CA0749
Arapahoe County District Court No. 15CR581
Honorable Ruthanne Polidori, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Santos Sanchez Johnston,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE ROMÁN
Furman and Lichtenstein, JJ., concur

Announced November 29, 2018

Cynthia H. Coffman, Attorney General, John T. Lee, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Santos Sanchez Johnston, appeals his judgment of conviction for aggravated driving after revocation prohibited.  In so doing, he raises an issue of first impression in Colorado: whether weaving within a single lane of traffic can create reasonable suspicion of criminal activity to justify an investigatory stop.

¶ 2    We recognize that slight degrees of incidental weaving within a traffic lane do not alone give rise to the reasonable suspicion necessary to justify a stop of a vehicle.  But we conclude that, under the totality of the circumstances, the police officer's observation of defendant's vehicle weaving continuously within its own lane for over five miles was sufficient to create a reasonable suspicion justifying the traffic stop.  Accordingly, we affirm.

## I.    Background

¶ 3    An Arapahoe County sheriff's deputy noticed defendant's car weaving back and forth within the right-hand lane while traveling eastbound on Interstate 70.  The deputy followed defendant for five to six miles before stopping him.  During that time, defendant continuously weaved within his lane.  The deputy stopped

1

defendant on suspicion that he was driving under the influence of alcohol.

¶ 4     During the stop, the deputy noticed defendant had slightly slurred speech and bloodshot eyes.  The deputy also smelled a strong odor of alcohol.  A second officer on the scene noticed alcoholic beverage containers in the front passenger seat and informed the deputy.

¶ 5     When asked for his license and insurance, defendant produced his registration information but stated his license was suspended and he did not have insurance.  A check of his name and date of birth revealed an Oklahoma license and a showing of being a habitual traffic offender in Oklahoma.[1]

¶ 6     The deputy administered a horizontal gaze nystagmus test on defendant.  Defendant exhibited clues of intoxication, and the deputy placed him under arrest.  Defendant informed the deputy that he had been a habitual traffic offender for fourteen years and that his license was suspended.

---

[1] It was later discovered that defendant's Colorado license had been revoked and that he was a habitual traffic offender in Colorado as well.

2

¶ 7     The prosecution charged defendant with aggravated driving after revocation prohibited, driving under the influence, and lack of compulsory insurance.  The prosecution dismissed the compulsory insurance charge at trial.

¶ 8     Defendant filed a pretrial motion to suppress evidence and statements as the product of an illegal stop under the Fourth Amendment.  The trial court held a hearing to consider the motion.  At the hearing, the prosecution called the deputy who had stopped defendant.

¶ 9     The deputy testified that, over the course of five to six miles,

> [defendant] was going back and forth in his lane, so he was getting to the left side where the dotted line was, and then he'd go back over to the right side where the solid line was.  He would just keep going back and forth in his lane; wouldn't quite cross over them, but he kept going back and forth between the two lines.
>
> . . . .
>
> He made a lane change I believe to go around a truck, and . . . again, he was weaving within the lane but never actually went outside of the lane.  And then once he got past, he went back into the number two lane where he continued to weave, I want to say for several miles.  At that point I decided just to initiate a stop

3

because he was back and forth in his own
lane.

. . . .

[The weaving] was continuous the entire time.
I mean, just back and forth within the lanes,
other than when he made the lane change, the
two times that he made the lane change.

. . . .

I believe[d] he was drunk.  Weaving within
your lane is reasonable suspicion that
someone is driving under the influence of
alcohol, so I used that to stop him.

¶ 10     On cross-examination, the deputy conceded that he did not

see anything that he "would have specifically written a traffic

citation for; so no weaving, [or] failure to stay within one lane."  He

also agreed that he "didn't make the stop based on an idea that

careless driving was happening."  When asked if he generally

observes some type of illegal traffic maneuver or defective vehicle

before making stops on suspicion of drunk driving, he answered,

"Sometimes I do; sometimes I don't.  Each one is different."

¶ 11     During argument, defense counsel contended that there was

insufficient evidence of reasonable, articulable suspicion of criminal

activity.  Defense counsel noted defendant committed no traffic

4

infractions and that weaving within a single lane was not a violation of Colorado law.

¶ 12     The prosecutor argued the stop was justified even in the absence of a driving violation, contending that "it is enough for an officer to believe that a person might be under the influence" and that police "need not wait for an independent traffic violation to occur." The prosecutor further alleged there existed reasonable suspicion for "careless driving, distracted driving."

¶ 13     The trial court denied the motion to suppress, concluding the officer had reasonable suspicion for the stop. The court found "the case law does not require an actual traffic violation for the officer to have a reasonable suspicion that a person is drunk driving." Instead, the court held, "continuous weaving for a period of five to six miles observed by a police officer who had experience and training in DUI enforcement was sufficient to constitute a reasonable suspicion."

¶ 14     The jury found defendant guilty of aggravated driving after revocation prohibited and the lesser included offense of driving while ability impaired. This appeal followed.

## II. Analysis

¶ 15    Defendant argues that the trial court erred by denying his motion to suppress.  We disagree.

### A. Standard of Review

¶ 16    In suppression cases, an appellate court defers to the trial court's factual findings and will not disturb them if they are supported by competent evidence in the record.  *People v. Brown*, 217 P.3d 1252, 1255 (Colo. 2009).  The appellate court reviews the trial court's ultimate legal conclusions de novo.  *Id.*

### B. Seizures for Traffic Violations

¶ 17    The United States and Colorado Constitutions protect against unreasonable searches and seizures.  U.S. Const. amends. IV, XIV; Colo. Const. art. II, § 7.  Traffic stops implicate these federal and state constitutional protections against unreasonable seizure.  *People v. Chavez-Barragan*, 2016 CO 16, ¶ 10 (citing *People v. Rodriguez*, 945 P.2d 1351, 1359 (Colo. 1997)).  But a brief, investigatory seizure is justifiable when the officer has a reasonable, articulable suspicion that criminal activity has occurred, is taking place, or is about to take place.  *Id.*  Suspicion of even a minor traffic offense can provide the basis for a stop.  *Id.*

¶ 18    "[A]n officer's subjective motives for stopping a driver are irrelevant in determining whether an officer had reasonable suspicion." *People v. Vaughn*, 2014 CO 71, ¶ 11; *see also Whren v. United States*, 517 U.S. 806, 810 (1996).  An officer with "an objectively reasonable basis to believe that a driver has committed a traffic offense" is justified in making a stop.  *Vaughn*, ¶ 11.

### C.    Intra-lane Weaving as Reasonable Suspicion

¶ 19    Defendant argues that his weaving within a single lane, without more, did not create reasonable suspicion of driving under the influence, despite the officer's testimony that it did.  We reject any bright line rule and emphasize that whether there exists reasonable suspicion of intoxicated driving[2] is based on the totality of the circumstances.  On the facts of this case, we conclude that the deputy had such reasonable suspicion, and that, therefore, the stop did not violate defendant's constitutional right to be free from unreasonable searches and seizures.

---

[2] For simplicity, in this opinion we use the phrase "intoxicated driving" to refer to both the offense of "driving under the influence" and the offense of "driving while ability impaired."  *See* § 42-4-1301(1)(a)-(b), C.R.S. 2018.

¶ 20    The Fourth Amendment does not require that a police officer see the defendant actually commit a traffic violation before stopping him or her.  *See People v. Arias,* 159 P.3d 134, 137-38 (Colo. 2007) ("Facts that might seem innocent when viewed in isolation can sustain a finding of reasonable suspicion when considered in the aggregate, so long as the officer maintains an objectively reasonable belief that the collective circumstances are consistent with criminal conduct."); *see also United States v. Botero-Ospina,* 71 F.3d 783, 787 (10th Cir. 1995) ("[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation *or* if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring.") (emphasis added).

¶ 21    Colorado courts have not addressed the issue of whether an officer may lawfully stop a driver who has been observed to be weaving within his lane of traffic.  Other jurisdictions have considered this issue, however.

¶ 22    We agree with the "overwhelming weight of authority from other jurisdictions hold[ing] that repeated intra-lane weaving *can*

8

create reasonable suspicion of impaired operation." *State v. Pratt*, 932 A.2d 1039, 1041 (Vt. 2007) (emphasis added) (collecting cases); *see People v. Greco*, 783 N.E.2d 201, 205 (Ill. App. Ct. 2003) (collecting cases); *Neal v. Commonwealth*, 498 S.E.2d 422, 424-25 (Va. Ct. App. 1998) (collecting cases).

¶ 23    Indeed, some jurisdictions recognize that intra-lane weaving can form the basis of an investigatory stop if the weaving is "repeated" or over a "substantial distance." *People v. Perez*, 221 Cal. Rptr. 776, 778 (Cal. Ct. App. Dep't Super. Ct. 1985) (concluding that an officer has "reasonable cause to stop a vehicle on suspicion of driving under the influences where such weaving continues for a substantial distance"); *State v. Field*, 847 P.2d 1280, 1285 (Kan. 1993) ("[T]he repeated weaving of a vehicle within its own lane may constitute sufficient reasonable suspicion for an officer to stop and investigate the driver of the vehicle."); *State v. Bailey*, 624 P.2d 663, 664 (Or. Ct. App. 1981) ("[A] vehicle weaving within its own lane for a substantial distance gives rise to probable cause . . . .").

¶ 24     Still other jurisdictions recognize that intra-lane weaving can form the basis of an investigatory stop when the individual is "driving erratically" or there is "pronounced weaving or hard swerving." *Brown v. State,* 595 So. 2d 270, 270 (Fla. Dist. Ct. App. 1992) (concluding there was a valid stop when the car weaved and "slowed to 45 miles per hour and then accelerated to 55 miles per hour on several occasions"); *State v. Binette,* 33 S.W.3d 215, 219-20 (Tenn. 2000) ("While Binette did move laterally at times within his lane . . . , we find that his movement was not pronounced, and therefore did not give rise to reasonable suspicion that he was under the influence of an intoxicant."). But,

> [t]here are limits . . . on the extent to which weaving can serve as a factor creating reasonable suspicion of driving under the influence. For instance, an isolated incident of crossing into another lane will not ordinarily create reasonable suspicion of driving while impaired. Nor will weaving within a lane, without more, ordinarily create reasonable suspicion of driving under the influence.

*Amundsen v. Jones,* 533 F.3d 1192, 1199 (10th Cir. 2008) (citations omitted).

10

¶ 25 "Indeed, if failure to follow a perfect vector down the highway . . . were [a] sufficient reason[] to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy." *United States v. Lyons*, 7 F.3d 973, 976 (10th Cir. 1993), *overruled on other grounds by Botero-Ospina*, 71 F.3d at 787. As the deputy in this case acknowledged at the suppression hearing, in his experience people do not "tend to drive in a perfectly straight line."

¶ 26 In agreeing with these authorities, therefore, we do not adopt a bright line rule that weaving within a single lane, by itself, gives rise to reasonable suspicion. Indeed, "slight degrees of intra-lane weaving alone do not justify a stop." *Pratt*, 932 A.2d at 1042; *see State v. Post*, 733 N.W.2d 634, 639 (Wis. 2007) (rejecting a bright line rule because weaving that is "minimal or happens very few times over a great distance . . . can be insignificant enough that it does not give rise to reasonable suspicion"). Yet, we also do not adopt a bright line rule that weaving within a single lane gives rise to reasonable suspicion *only* when it is erratic, unsafe, or illegal. *See Post*, 733 N.W.2d at 641.

11

¶ 27    Rather, we apply the well-established principle that reasonable suspicion for an investigative stop must be based on the totality of the circumstances. *People v. Reyes-Valenzuela*, 2017 CO 31, ¶ 12. Thus, other factors "such as pronounced or prolonged weaving or other suspicious aspects of driving" can support reasonable suspicion even if the driving was not erratic or unsafe. *Post*, 733 N.W.2d at 641 (footnote omitted).

¶ 28    In this case, the deputy did not see defendant commit any traffic offense. But he observed defendant's car continuously weave within a single lane for five or six miles. He identified this weaving behavior as an indication "that someone is driving under the influence of alcohol." And when asked if it is normal for people to weave within one lane, he answered,

> Not in the frequency that he was doing it,
> no. . . . When you are going back and forth
> and almost playing pinball with the lanes, yes,
> he didn't cross over a line, but he was just
> back and forth, back and forth. It was like a
> sign [sic] wave, watching a sign [sic] wave.

¶ 29    Considering the totality of the circumstances, we conclude that there existed reasonable suspicion that the driver was intoxicated. *See People v. Loucks*, 481 N.E.2d 1086, 1087 (Ill. App.

12

Ct. 1985) (upholding a stop where "the vehicle the defendant was driving was weaving within its own lane of travel continuously for a distance of about two blocks"); *State v. Otto*, 726 S.E.2d 824, 828 (N.C. 2012) (upholding a stop where the defendant "was weaving 'constantly and continuously' over the course of three-quarters of a mile"); *Pratt*, 932 A.2d at 1041 (upholding a stop where "the trooper observed defendant drift back and forth within his lane several times over a distance of approximately five miles").

¶ 30　　Accordingly, the trial court did not err in denying defendant's motion to suppress.[3]

### III.　Conclusion

¶ 31　　The judgment is affirmed.

JUDGE FURMAN and JUDGE LICHTENSTEIN concur.

---

[3] Given our disposition of this case, we need not reach the People's other arguments that there existed reasonable suspicion that defendant was about to violate section 42-4-1007(1)(a), C.R.S. 2018 (weaving out of designated lanes), or section 42-4-1402(1), C.R.S. 2018 (careless driving).